```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                              :

VARIOUS GRAND JURY SUBPOENAS         :

                                                          :

------------------------------------------------------------X

12 Misc. 381

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

    The Government moves to compel compliance with grand jury subpoenas seeking foreign bank account information from five taxpayers. Each of those individuals resists compliance, asserting the act of production privilege against self-incrimination under the Fifth Amendment. The Government counters that the Required Records doctrine applies and negates the act of production privilege. For the following reasons, the Government's motion to compel compliance with its subpoenas <u>duces tecum</u> is granted.

## BACKGROUND

    Benjamin Franklin cogently observed, "[I]n this world nothing can be said to be certain, except death and taxes." Letter from Benjamin Franklin to Jean Baptiste Le Roy, November 13, 1789, in 10 THE WRITINGS OF BENJAMIN FRANKLIN 69 (A. Smyth ed. 1907). This motion reveals the effort that some individuals will undertake to escape the consequences of Franklin's unassailable aphorism.

    The United States has always been concerned with individuals who seek to circumvent the law. Foreign bank secrecy laws have often been invoked by those seeking to undermine the integrity of United States financial markets or avoid taxes. <u>See</u> <u>SEC v. Banca</u>

Della Svizzera Italiana, 92 F.R.D. 111, 117 (S.D.N.Y. 1981) (Pollack, J.) ("The strength of the United States interest in enforcing its securities laws to ensure the integrity of its financial markets cannot seriously be doubted. That interest is being continually thwarted by the use of foreign bank accounts.").

Beginning in 2010, the Government served grand jury subpoenas on five unrelated taxpayers (the "Subjects"). The grand jury is investigating whether each of the Subjects has a financial interest in foreign bank accounts that they failed to disclose to the Internal Revenue Service. Preliminarily, the investigation has revealed that each Subject had a financial interest in, or signature or other authority over, a foreign bank account. (Memorandum of Law in Support of Government's Motion to Compel Compliance with Grand Jury Subpoenas ("Gov't Mem.") at 4.) "Financial interest" is defined broadly to include not only the owners of record or legal title but also persons who cause a separate legal entity to be created to evade the Bank Secrecy Act. See 31 C.F.R. § 1030.350(e)(1) and (3).

Each grand jury subpoena seeks the following:

[A]ny and all records created, obtained, and or maintained from [a specified date] to the present that are in your care, custody, or control relating to any and all bank, securities, or other types of financial accounts in any foreign country in which you have a present or future financial interest, legal interest, beneficial ownership interest, or over which you have signature or other authority, if the aggregate value of these accounts exceeded $10,000 at any time during the calendar year, including but not limited to records required to be maintained pursuant to 31 C.F.R. § 1010.420, namely, records reflecting the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with who such account is maintained, the type of such account, and the maximum value of each such account during each calendar year.

The foreign bank account information subpoenaed by the Government is required to be kept and maintained by each Subject under the Bank Secrecy Act of 1970, 31 U.S.C. § 5311, et seq. Regulations promulgated under the Bank Secrecy Act require, inter alia, (1) United States citizens and residents to disclose their foreign bank accounts, see 31 C.F.R. § 1010.350, and (2) that the records for such accounts "be retained by each person having a financial interest in or signature or other authority over any such account" for at least five years and be kept "available for inspection as authorized by law." 31 C.F.R. § 1010.420. None of the Subjects produced any records in response to the grand jury subpoenas. Instead, each asserts a Fifth Amendment privilege against self-incrimination.

## DISCUSSION

The Fifth Amendment shields an individual from being "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. It protects individuals against forced testimonial communications. See Fisher v. United States, 425 U.S. 391, 408 (1976); see also Miranda v. Arizona, 384 U.S. 436, 460 (1966) (The privilege is "fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964))). Testimonial communications are not limited to statements; acts also convey messages. See, e.g., Fed. R. Evid. 801 advisory committee's note ("Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement.").

3

Synthesizing these concepts, the act of production privilege prohibits the compelled disclosure of documents when the act of production has independent communicative aspects—such as an admission that the documents exist, that the subject possesses or controls the documents, that the documents are authentic, or that the subject believes the documents are responsive to the subpoena. See Fisher, 425 U.S. at 410; United States v. Doe, 465 U.S. 605, 611 (1984); see also In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999, 191 F.3d 173, 178 (2d Cir. 1999) ("[I]t is now settled that an individual may claim an act of production privilege to decline to produce documents, the contents of which are not privileged, where the act of production is, itself, (1) compelled, (2) testimonial, and (3) incriminating."). But the act of production privilege is circumscribed in certain instances.

The Required Records doctrine negates the act of production privilege for "records required by law to be kept . . . ." Shapiro v. United States, 335 U.S. 1, 17 (1948). The doctrine permits "the government . . . [to] have the means, over an assertion of the Fifth Amendment [privilege against self-incrimination], to inspect the records it requires an individual to keep as a condition of voluntarily participating in [a] regulated activity." In re Special Grand Jury Subpoena, 691 F.3d 903, 908-09 (7th Cir. 2012). It applies if: (1) the purposes of the government inquiry are "essentially regulatory"; (2) information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and (3) the records themselves must have assumed public aspects which render them analogous to a public document. Grosso v. United States, 390 U.S. 62, 67-68 (1968).

While the Second Circuit has not held that foreign bank records required to be kept pursuant to the Bank Secrecy Act are subject to the Required Records doctrine, every Court

4

of Appeals to address this issue has concluded that they are. See In re Grand Jury Proceedings, No. 4-10, --- F.3d ----, 2013 WL 452768, at *1 (11th Cir. 2013); In re Grand Jury Subpoena, 696 F.3d 428, 433-35 (5th Cir. 2012); In re Special Feb. 2011-1 Grand Jury Subpoena Dated Sep. 12, 2011, 691 F.3d 903, 909 (7th Cir. 2012); M.H., 648 F.3d at 1073-74. And these holdings are persuasive.

I. "Essentially Regulatory"

The first Grosso factor is whether the requirement in question is essentially regulatory or criminal in nature. See M.H., 648 F.3d at 1073. The Government may properly impose a record-keeping and inspection requirement as a condition of engaging in an activity that is within its power to regulate. Shapiro, 335 U.S. at 33. The purpose of the Bank Secrecy Act is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311. Although the statute relates to the criminal law, this does not overcome its "essentially regulatory" character. See Cal. Bankers Ass'n v. Shultz, 416 U.S. 21, 76 (1974); see also In re Grand Jury Subpoena, 696 F.3d at 434.

The Supreme Court has invalidated reporting requirements when an individual is required to report inherently illegal activity. See Leary v. United States, 395 U.S. 6, 16-18 (1969) (invalidating required reporting of marijuana dealing); Marchetti v. United States, 390 U.S. 39, 57 (1968) (invalidating required reporting of illegal gambling); Haynes v. United States, 390 U.S 85, 96-99 (1968) (invalidating required reporting of illegal firearms). But here, "[t]here is nothing inherently illegal about having or being a beneficiary of an offshore foreign bank account." M.H., 648 F.3d at 1074; see also In re Grand Jury Subpoena dated Feb. 2, 2013, --- F.

Supp. 2d ----, 2012 WL 6106332, at *4-*5 (E.D.N.Y. Dec. 10, 2012) ("Because the record-keeping requirements of 31 C.F.R. § 1010.420 do not target inherently illegal activity, the provision is essentially regulatory in nature.").

The record-keeping and reporting requirements of the Bank Secrecy Act are at least equally concerned with civil liability. See Schultz, 416 U.S. at 76. And there is no plausible argument that these regulations apply almost exclusively to people engaged in criminal activity; they are "essentially regulatory" in nature. See In re Grand Jury Subpoena, 696 F.3d at 434. Moreover, the Second Circuit upheld a similar Bank Secrecy Act regulation where the reporting requirement in question did not involve an area "permeated by criminal statutes." United States v. Dichne, 612 F.2d 632, 640 (2d Cir. 1979) (citation omitted). For these reasons, the first Grosso factor is met.

II. "Customarily Kept"

The second Grosso factor is satisfied because the sought-after records—essentially account numbers, bank statements, and basic account information—correspond with the records required by IRS regulations related to offshore banking. See In re M.H., 648 F.3d at 1076; 31 C.F.R. §§ 1010.350, 1010.420. And they are precisely the types of records that a reasonable bank account holder would customarily keep. M.H., 648 F.3d at 1076; see also In re Grand Jury Subpoena dated Feb. 2, 2013, --- F. Supp. 2d ----, 2012 WL 6106332, at *7.

The Subjects contend that these records are not customarily kept by foreign bank account holders who wish their accounts to remain secret. But they cite no authority for this proposition. As Judge Pollack observed, "[i]t would be a travesty of justice to permit a foreign company to invade American markets, violate American laws if they were indeed violated,

6

withdraw profits and resist accountability for itself and its principals for the illegality by claiming their anonymity under foreign law." Banca Della Svizzera, 92 F.R.D. at 119. And it is equally unacceptable for an American taxpayer to profit from American markets, refuse to report that profit as taxable income, and then claim that he cannot be held accountable because he engineered his offshore account to be secret. This Court declines to credit such sophistry. Thus, the second Grosso factor is also satisfied.

III. "Public Aspects"

The third Grosso factor—"public aspects"—is intertwined with the "essentially regulatory" Grosso factor. The Supreme Court has recognized that if a scheme is essentially regulatory, then it necessarily has some "public aspects." Shapiro, 335 U.S. at 33. And the Required Records doctrine "applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established." Shapiro, 335 U.S. at 17.

Here, the "public aspects" factor is met. "Where personal information is compelled in furtherance of a valid regulatory scheme, as is the case here, that information assumes a public aspect." M.H., 648 F.3d at 1077. Satisfaction of this factor does not require that the documents are actually made public or filed with the Government. Rather, as the Supreme Court noted, there is "no meaningful difference between an obligation to maintain records for inspection, and such an obligation supplemented by a requirement that those records by filed periodically with officers of the United States." Marchetti, 390 U.S. at 56 n.14. Accordingly, this Court finds that the Required Records doctrine applies.


IV. <u>Applicability of the Bank Secrecy Act Regulations to the Subjects</u>

The Subjects resist compliance with the grand jury subpoenas on the additional ground that they are not covered by the Bank Secrecy Act regulations. But this argument inverts the investigatory function of the grand jury to "determine whether a crime has been committed and who committed it." <u>Branzburg v. Hayes</u>, 408 U.S. 665, 701 (1972). "[T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." <u>United States v. R. Enters, Inc.</u>, 498 U.S. 292, 297 (1991) (citation omitted). And "at this point in its investigation, the Government need not prove that the regulation or the Bank Secrecy Act apply." <u>M.H.</u>, 648 F.3d at 1071.

## CONCLUSION

For the foregoing reasons, the Government's motion to compel compliance with the grand jury subpoenas <u>duces tecum</u> served on each of the five Subjects is granted. The Clerk of Court is directed to mark this case closed.

Dated:   February 19, 2013
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of record.*