UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                           :       **TO BE FILED UNDER SEAL**

IN RE: VARIOUS GRAND JURY SUBPOENAS   :      12 Misc. 381

                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S
MOTION TO COMPEL COMPLIANCE WITH GRAND JURY SUBPOENAS**

 

PREET BHARARA
United States Attorney for the
Southern District of New York


DANIEL W. LEVY
DAVID B. MASSEY
JASON H. COWLEY
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :        **TO BE FILED UNDER SEAL**

IN RE: VARIOUS GRAND JURY SUBPOENAS   :        12 Misc. 381

                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF GOVERNMENT'S MOTION TO COMPEL COMPLIANCE WITH GRAND JURY SUBPOENAS

The United States respectfully submits this Reply Memorandum of Law in further support of its motion to compel compliance with five substantially identical grand jury subpoenas. In support of its motion, the Government cited recent opinions from the Ninth, Seventh, and Fifth Circuits that all unequivocally stand for the proposition that recipients of grand jury subpoenas like the ones at issue here cannot lawfully refuse to comply with them. The Government also cited holdings to the same effect from the Eastern District of New York, the Southern District of Florida, and the District of Arizona and noted that a district court in the Northern District of Georgia had held similarly. See Memorandum of Law in Support of Government's Motion to Compel Compliance With Grand Jury Subpoenas, dated November 19, 2012, at 13-14 & n.7 ("Gov't Mem."). Indeed, since the Government's original brief was filed in November 2012 the same District Judge in Eastern District of New York issued yet another opinion compelling compliance with a virtually identical grand jury subpoena and rejecting the very arguments made now by the Respondents. And, prior to that, yet another court, the Eastern District of Virginia, has explicitly rejected many of the arguments now advanced by the Subjects.

The Subjects now ask the Court to disregard the uniform holdings of these courts based on the entirely unsupported proposition that the required records doctrine is unconstitutional -- a

position that no court has taken -- and their speculation that the application of the required records doctrine in this context might someday be reversed. <u>See</u> Memorandum of Law in Opposition to Government's Motion to Compel Compliance With Grand Jury Subpoenas on behalf of Subjects B, C, and D, dated Dec. 10, 2012, at 9-10 ("Subj. Mem.").[1]  The Court should reject the Subjects' invitation.

As for the requirements for application of the required records doctrine, the Subjects advance proposition after proposition that have simply no support in caselaw, let alone in logic. Large sections of their brief rely on arguments that have never been accepted by any court.  The Court should compel the Subjects to comply with the Subpoenas.

Finally, one of the Subjects, Subject E, indicates that she believes that she is "outside the scope of the regulations in question here."  Leibman Ltr. at 2 n.1.  What she suggests is that, even if the Court grants the Government's motion, she will simply respond that she is not required by the applicable regulations to maintain records of foreign bank accounts, which will simply occasion another motion to compel by the Government.  The Government submits that the Court can, and should, rule on this issue now, rather that requiring the Government to file yet another motion to enforce Subpoena E.  Such piecemeal litigation serves only the ends of delay. Accordingly, the Government submits that Subject E should be required to demonstrate, on an <u>ex parte</u> and <u>in camera</u> basis, that she is not subject to requirements of Section 1010.420.  If Subject E makes such a showing, the Government is prepared to rebut that showing, also on an <u>ex parte</u> and <u>in camera</u> basis.

---

[1] By letters, Subject A and Subject E have joined in the arguments raised by Subjects B, C, and D.  <u>See</u> Letter from Richard A. Levine, Esq., on behalf of Subject A, dated Dec. 7, 2012; Letter from Alain Leibman, Esq., on behalf of Subject E, dated Dec. 7, 2012, at 1 ("Leibman Ltr.").

## I.      The "Required Records" Doctrine Is Not Unconstitutional

The Subjects begin the central part of their brief with a lengthy historical disquisition about the origins of the required records doctrine.  See Subj. Mem. at 6-9.  Their primary assertion is that "if the Supreme Court re-examines the issue, it will hold that the required records doctrine is unconstitutional in light of the later-established act of production doctrine." Subj. Mem. at 9.

The problem with this argument is that, since both the establishment of the act of production doctrine in Fisher v. United States, 425 U.S. 391 (1976), and its refinement in United States v. Doe, 465 U.S. 605 (1984), the required records doctrine has been repeatedly applied by the Supreme Court and Second Circuit.  Neither court has held that the required records doctrine is inconsistent, or incompatible, with the act of production doctrine.  Indeed, the Subjects cite no decision from any court holding that the required records doctrine is unconstitutional.

To the contrary, the Second Circuit has explicitly rejected the notion that the required records doctrine has been weakened by Supreme Court cases post-dating its establishment in Shapiro v. United States, 335 U.S. 1, 32 (1948).  For example, in In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985, 793 F.2d 69, 73 (2d Cir. 1986), the Second Circuit held:

> Doe claims that the "required records" exception to the fifth amendment is no longer valid after the Supreme Court's decision in United States v. Doe.  The Court in Doe held that although the contents of a document might not be privileged, the act of producing the document may be.  The Court reasoned that physical production of documents can be testimonial when it constitutes an admission of facts such as control over, or authenticity of, documents.  The "Doe" in the present case makes the parallel argument that although a "required record" may not contain privileged information, a subpoenaed party may not be compelled to perform the act of producing the record if to do so might incriminate him.  We disagree.

> Doe did not involve required records and we find nothing in its "act of
> production" analysis that can be construed as weakening the required records
> exception.  Indeed, the exception overrides the privilege against self-incrimination
> in situations in which the privilege would otherwise apply; that is, even if the
> compelled act of producing the required records might be testimonial and
> incriminating.

In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985, 793 F.2d 69, 73 (2d Cir.

1986) (citations omitted); see also Baltimore City Dep't of Social Servs. v. Bouknight, 493 U.S.

549, 555-58 (1990) (applying required records doctrine over an act of production objection); In

re Doe, 711 F.2d 1187, 1192 (2d Cir. 1983) (rejecting an attack on the required records exception

based on the act of production doctrine announced in Fisher); see generally United States v. Doe,

465 U.S. 605 (1984) (answering question Fisher left open and holding that Fifth Amendment

does not protect contents of individual's business records in his or her own possession).  This

Court, bound by Second Circuit and Supreme Court precedent, should not be the very first court

to find that the required records doctrine is unconstitutional.

Nor has any court held, as the Subjects would suggest, that the required records doctrine

is limited in its application to "exigent circumstances," a fact that the Subjects deem "critical" to

recognize.  Subj. Mem. 6.  No court has held that the application of the required records doctrine

depends on whether the need for the regulatory regime that generates a record-keeping

requirement is emergent or not.  Indeed, the Subjects cite no authority for the notion that the

exigent circumstances that generated the regulatory regime at issue in Shapiro are a factor in

determining the applicability of the required records doctrine in another context.

In a fruitless effort to suggest that the required records doctrine is constitutionally

suspect, the Subjects cite a snippet of language from Shapiro:

> It may be assumed at the outset that there are limits which the government cannot constitutionally exceed in requiring the keeping of records which may be inspected by an administrative agency and may be used in prosecuting statutory violations committed by the record-keeper himself.

Subj. Mem. at 8 (citing Shapiro, 335 U.S. at 32).

Curiously, the Subjects omit the language that immediately follows the quoted language in Shapiro:

> But no serious misgiving that those bounds have been overstepped would appear to be evoked when there is a sufficient relation between the activity sought to be regulated and the public concern so that the government can constitutionally regulate or forbid the basic activity concerned, and can constitutionally require the keeping of particular records, subject to inspection by the Administrator.  It is not questioned here that Congress has constitutional authority to prescribe commodity prices as a war emergency measure, and that the licensing and record-keeping requirements of the Price Control Act represent a legitimate exercise of that power.  Accordingly, the principle enunciated in the Wilson case, and reaffirmed as recently as the Davis case, is clearly applicable here:  namely, that the privilege which exists as to private papers cannot be maintained in relation to 'records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established.'

Id. at 32-33.

The language that the Subjects failed to include makes plain that an important question in applying the Supreme Court's required records doctrine is whether the activity that triggers the record-keeping or reporting requirement is within Congress's power to regulate or forbid.  Id. Congress could have "closed the channels" to foreign financial transactions entirely.  California Bankers v. Shultz, 416 U.S. 21, 46-47 (1974).  Because Congress chose to regulate offshore bank accounts, rather than forbid them outright, it follows that Congress may legitimately require that those who voluntarily choose to have an offshore bank account to preserve their records and produce those records on demand.  See Shapiro, 335 U.S. at 32.

II.     *Grosso*'s Three-Prong Test Is Plainly Satisfied For the Subpoenas

The Subjects then turn to the three-part test enunciated in Grosso v. United States, 390

U.S. 62 (1968).  Subj. Mem. at 9-28.  The Court should follow the uniform line of precedent that

holds that grand jury subpoenas -- just like the ones served on the Subjects -- must be complied

with.  See In re Grand Jury Investigation M.H., 648 F.3d 1067 (9th Cir. 2011), cert. denied, 2012

WL 553924 (June 25, 2012); In re Grand Jury Subpoena, 696 F.3d 428 (5th Cir. 2012); In re

Special February 2011-1 Grand Jury Subpoena Dated September 12, 2011, 691 F.3d 903 (7th

Cir. 2012), rehearing & rehearing en banc denied (Oct 24, 2012); In re Grand Jury Subpoenas

Dated September 9, 2011, No. 11 Misc. 747 (JFB), slip op. (E.D.N.Y. Dec. 30, 2011); In re

Grand Jury Subpoenas Dated January 3, 2011, No. 11 Mag. 6164, slip op. (S.D. Fla. Mar. 4,

2011); In re Grand Jury Subpoena No. 10-04-400, slip op. (D. Ariz. Feb. 16, 2011).

Indeed, there are now two additional opinions reinforcing this line of precedent.  See In

re Grand Jury Subpoena Dated February 2, 2012, 12 Civ. 553 (JFB), 2012 WL 6106332

(E.D.N.Y. Dec. 10, 2012); United States v. John and Jane Doe, 11 GJ 981, slip. op. (E.D.Va.

Oct. 2, 2012).[2]

A.     The Purpose of the Record-Keeping
       Requirement is Essentially Regulatory

Try as they might over a full ten pages of their brief, Subj. Mem. at 10-20, the Subjects

cannot overcome the opinions of three Circuits and a host of District Courts, all of which held

that the purpose of the record-keeping requirements of Section 1010.420 are essentially

regulatory and that the first prong of the Grosso test is satisfied.

The Subjects first attempt to draw a distinction between Fifth Amendment challenges to

_____

[2] These two opinions are attached hereto in Appendix A.

6

the constitutionality of a particular statute and the assertion of the Fifth Amendment privilege in response to a subpoena, and point out that they are asserting the latter.  Subj. Mem. at 10-13.  But the distinction makes little sense.  Courts in the Second Circuit applying the Grosso test have never viewed, for example, the holding in United States v. Dichne, 612 F.2d 632 (2d Cir. 1979), as applicable only to a facial Fifth Amendment challenge to a statute and inapplicable to the assertion of a Fifth Amendment privilege.  See, e.g., Grand Jury Subpoenas Dated September 9, 2011, slip op. at 9-10; Grand Jury Subpoena Dated February 2, 2012, 2012 WL 6106332 at *6.  And Dichne substantially dictates the result in this case because it held that a similar provision of the BSA was essentially regulatory.  Dichne, 612 F.2d at 639-41.  Much as the Subjects try to avoid the import of Dichne by resorting to this meaningless distinction, they cannot.

The Subjects next seek to reframe the first prong of the Grosso test to require that that the statute at issue have absolute no connection to criminal enforcement in order to satisfy this prong.  See Subj. Mem. at 15-17.  But that is not how any court has applied the first prong of the Grosso test.  And, indeed, the Subjects cite to no opinion applying Grosso in this fashion.  At most, they cite to a Fifth Circuit opinion, United States v. Hajecate, 683 F.2d 894, 901 (5th Cir. 1982), but the problem here is that Hajecate does not apply Grosso.  Plus, Hajecate, in discussing the BSA as evidencing Congress' view that "secret foreign bank accounts and secret foreign financial institutions are inevitably linked to criminal activity" was concerned with secret foreign bank accounts.  Nowhere does Hajecate, or any other case, suggest that all foreign bank accounts are linked to criminal activity.  And it is all foreign bank accounts to which Section 1010.420 is directed.  And it is entire regulatory regime that is evaluated in determining whether it is primarily civil or criminal in nature.

As the courts that have considered application of the required records in this context have noted, "there is nothing inherently illegal about having or being a beneficiary of an offshore foreign bank account." <u>M.H.</u>, 648 F.3d at 1074; <u>see</u>, <u>e.g.</u>, <u>Grand Jury Subpoena Dated February 2, 2012</u>, 2012 WL 6106332 at *6; <u>John and Jane Doe</u>, slip. op at 7 & n.3 ("Offshore banking itself is not illegal or inherently suspect, and the basic information sought by the government about the name, number, type, location, and maximum value of foreign accounts does not necessarily yield incriminating details about the source of account holders' wealth or the substance of their transactions" and noting that a candidate for presidential office "held many offshore investments, including a Swiss bank account"). Thus, because the record-keeping requirement of Section 1010.420 is not addressed to a "highly selective group inherently suspect of criminal activities," Dichne 612 F.2d at 639, the first prong of the <u>Grosso</u> test is satisfied.

Lastly, in support of the claim that the record-keeping requirements are primarily criminal, the Subjects claim that it is "extremely significant that these regulations are administered by FinCEN, the Financial *Crimes* Enforcement Network." Subj. Mem. at 17 (emphasis in original). This is silly. FinCEN has myriad regulatory roles, including civil enforcement, rulemaking, policy formation, data analysis, and coordination with international counterparts. <u>See</u> FinCEN, What We Do (available at <<http://www.fincen.gov/about_fincen/wwd/>>) ("FinCEN carries out its mission by receiving and maintaining financial transactions data; analyzing and disseminating that data for law enforcement purposes; and building global cooperation with counterpart organizations in other countries and with international bodies."). That the agency has the word "crime" in its name is not determinative of anything. Gov't Mem. at 4.

Given the extensive civil aspects of the regulations at issue, see Gov't Mem. at 4, 14-16, this prong of the Grosso test is plainly satisfied, as three Circuits and a host of District Courts have already held.

**B.      The Subpoenaed Records Are of A
          Type that An Individual Maintains**

The Subjects next argue that records of their foreign bank accounts are not "customarily kept."  Subj. Mem. at 21-23.  The Subjects are incorrect.

First, the Subjects claim that, for this prong of the Grosso test to be satisfied, "the records must be of a type which one would expect the regulated party to maintain in the ordinary course of his or her affairs, if the regulation did not exist."  Subj. Mem. at 21 (emphasis added).  What the Subjects advance is a formulation of this prong of the Grosso test that no court has employed, not even the Supreme Court in Marchetti v. United States, the case to which the Subjects refer. Id. (citing Marchetti v. United States, 390 U.S. 39, 57 (1968)).  This Grosso requirement does not ask what a person would customarily do absent the regulation; it asks simply whether "the records [are] of a kind which the regulated party has customarily kept."  In re Doe, 711 F.2d 1187, 1191 (2d Cir. 1983) (citing Grosso, 390 U.S. at 67-68).

For this reason, the Court should reject Subjects' argument that the Ninth Circuit and Fifth Circuits have "constructed a tautological premise to find that foreign bank records are of a kind customarily kept."  Subj. Mem. at 22 n.16.  Part of the reason that these records are customarily kept is because U.S. taxpayers need these types of documents in order to prepare their annual tax returns.  That is a sufficient reason to find that the documents are customarily kept.  See Grand Jury Subpoena Dated February 2, 2012, 2012 WL 6106332 at *7 (adopting reasoning of Ninth and Fifth Circuits).

Moreover, the baseline for considering what holders of foreign bank accounts customarily do is emphatically <u>not</u> those account-holders who maintain accounts in "secrecy jurisdictions."  Subj. Mem. at 21-22.  This prong of the <u>Grosso</u> test does not ask what people who are trying to hide money overseas and evade taxes customarily do with records concerning their overseas accounts.  Rather, it asks about a much larger set of people -- all foreign account-holders.  Thus, the Subjects' discussion of allegations contained in various indictments, Subj. Mem. at 22-23, is beside the point.  The issue is not what people (<u>e.g.</u>, account-holders, financial advisors, or bankers) or entities (e.g., banks) ) who are alleged to have committed crimes customarily do.  The issue is whether <u>all</u> holders of foreign bank accounts customarily keep records of their foreign bank accounts.  It simply cannot be said that the typical holder of a foreign bank account is committing a crime.  After all, hundreds of thousands of U.S. taxpayers file FBARs every year and what the FBAR form requires is the information that Section 1010.420 requires be kept.  <u>See</u> Gov't Mem. at 16; Levy Decl., Exh. F.

With the proper standard articulated, it is plain that people maintaining foreign bank accounts customarily keep records identifying "the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during the reporting period."  31 C.F.R. § 1010.420.

It is hard to imagine that people maintaining a bank account overseas would commit entirely to memory absolutely crucial information about their account (<u>e.g.</u>, the name and address of the bank at which the account is held, the number of designation of the account, and the

10

amounts held in the account).  It is common sense that people maintaining such accounts would keep some records relating to these accounts so that they can do all of the things that people customarily do with bank accounts:  access the funds in the accounts; utilize the assets as they see fit; transact in the accounts as they see fit; correspond with the pertinent bank; and monitor the performance of the account.  It is inconceivable that a person maintaining funds overseas would commit to memory such crucial details as the account number and name of the bank is inconceivable.

C.     **The Records Have Assumed Public Aspects**

With respect to this prong, the Subjects invent three categories of records that they contend are the only ones that have assumed public aspects: (1) records that "further a regulatory scheme which is essential to protect sectors of the public or to promote the public welfare"; (2) records that "are otherwise vital to the proper functioning of an essentially regulatory regime promulgated in response to emergency or other exigent circumstances"; and (3) records that "are routinely forwarded to a regulatory or licensing body."  Subj. Mem. at 25.  Having constructed these three categories, they then assert that the records required to be kept by Section 1010.420 do not fall within their three invented categories.

The Court can dispose of this argument in short order.

First, the three categories constructed by the Subjects have no basis in law.  They have not, and cannot, establish that these categories of documents are the outer bounds of those documents that have assumed public aspects.  They have cited not a single case supporting such a notion.  Indeed, the courts that have ruled on identical subpoenas have rejected some of these fictional categories of documents that have assumed public aspects.  For example, Judge Bianco

in the Eastern District of New York considered the notion that for a document to have assumed public aspects there must be licensing or heightened regulation at issue:

> The Court also rejects respondent's argument that the required records exception is only triggered where there is some level of licensure or heightened government regulation at issue. (See Resp't's Mem. of Law in Opp'n at 8) (stating "the required records exception to the act of production privilege stems from exigent circumstances not present in the regulatory scheme issued under the [BSA]"). The Court agrees with the government's position, stated at oral argument, that it is up to Congress to determinate the appropriate level of regulation that should accompany a required records mandate. The Court likewise notes that the Fifth Circuit held similarly in its most recent decision, stating "adopting a rule that the legitimacy of a record-keeping requirement depends on Congress first enacting substantive restrictions would lead to absurd results." In re Grand Jury Subpoena, 696 F.3d at 436.

In re Grand Jury Subpoena Dated February 2, 2012, 2012 WL 6106332 at *7 n.4.

Second, even if the Subjects' three categories had some basis in law, the records required to be kept by Section 1010.420 would easily satisfy them. For example, the Supreme Court perceives "no meaningful difference between an obligation to maintain records for inspection, and such an obligation supplemented by a requirement that those records be filed periodically with officers of the United States." Marchetti, 390 U.S. at 56 n.14. Thus, records required to be kept by Section 1010.420 are, in the eyes of the Supreme Court, not to be treated meaningfully differently than as if the documents required to be kept were filed with the Internal Revenue Service, for example. Thus, the documents required to be kept by Section 1010.420 would easily Subjects category (3). And the records required to be kept by Section 1010.420 certainly do "further a regulatory scheme which is essential to protect sectors of the public or to promote the public welfare." After all, the record-keeping requirements of the BSA had as their stated purpose "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or

counterintelligence activities."  31 U.S.C. § 5311; see also H.R. Rep. No. 91-975, at 10 (1970),

reprinted in 1970 U.S.C.C.A.N. 4394, 4405 (listing the purposes of the record-keeping

requirements in Title II of the BSA as: (1) "facilitat[ing] the supervision of financial

institutions"; (2) aiding the "authorities in lawful investigations"; and (3) "provid[ing] for the

collection of statistics necessary for the formulation of monetary and economic policy").  Much

as the Subjects would wipe away those purposes with a wave of their hand, Subj. Mem. at 26,

pronouncements by Congress in enacting valid regulatory requirements cannot be so easily

dismissed.

**V.      The Subjects' Knowledge Argument Fails**

        The Subjects' last argument is that, because people who open overseas bank accounts

may not know about the record-keeping requirement, they cannot be deemed to have knowingly

waived their Fifth Amendment privilege.  Subj. Mem. at 29-31.  This argument fails because it

seeks an utterly unprecedented rebalancing of how grand jury subpoenas function.

        Nothing about the Grosso test requires that the recipient of a subpoena know of the

specific record-keeping requirement in order to be subject to the required records doctrine.  In

asserting to the contrary, they misread the waiver language in prior cases.  Subj. Mem. at 29-30.

It is the knowing and voluntary opening of a foreign bank account -- inherently not a compelled

act -- that provides logical support for the act of production doctrine.  But a knowing waiver of

the Fifth Amendment privilege is nowhere required in the required records caselaw.

        After all, the Government is in the mere investigative, i.e., information gathering, phase.

It has not charged any of the Subjects with a crime, which would require the Government to

prove some mental state with respect to the Subjects' conduct.  Contrary to their suggestion, id.

at 30, the Government need not make any showing of knowledge of the record-keeping requirement on the part of the Subjects for it to merely subpoena these documents.  Not surprisingly, no court has accepted the Subjects' argument and they have cited absolutely no authority for this proposition.  To engraft a knowledge requirement in this context would be an utterly unprecedented holding and would completely upset the proper function of grand jury investigations.

## IV.   Subject E Should Be Required To Show That She Is Not Required To Maintain Records of A Foreign Bank Account

Finally, one of the Subjects, Subject E, indicates that she believes that she is "outside the scope of the regulations in question here."  Leibman Ltr. at 2 n.1.  What she suggests is that, even if the Court grants the Government's motion, she will simply respond that she is not required by the applicable regulations to maintain records of foreign bank accounts, which will simply occasion another motion to compel by the Government.  The Government submits that the Court can, and should, rule on this issue now, rather that requiring the Government to file yet another motion to enforce Subpoena E.  Such piecemeal litigation serves only the ends of delay.

In addition to all of the facts contained in the Government's principal brief, it should be noted that, with respect to Subject E, the Government is in possession of a client list that Beda Singenberger, see Gov't Mem. at 7, provided to one of his U.S. taxpayer clients (the "Client List").  The Client List contains significant details regarding clients and prospective clients who were U.S. taxpayers, including: (1) the U.S. taxpayers' last names and, in some cases, first names; (2) their places of residence; (3) the dates and places of Singenberger's last meeting with the U.S. taxpayers; (4) the names of the entities through which the U.S. taxpayers held their accounts and the date of the by-laws of these entities; (5) the jurisdictions under whose laws

these entities were formed, for example, Hong Kong or Liechtenstein; (6) the names of the Swiss

banks at which the entities held the U.S. taxpayers' accounts; and (7) the names of the client

advisor who serviced the U.S. taxpayers' accounts at the identified banks.  With respect to

Subject E, the Client List identifies her by first and last name, the bank at which she maintained

an account, her financial advisor at the bank, the date of her last meeting with Singenberger, and

the name and date of the by-laws of the sham Liechtenstein foundation used to hold her account,

which is the exactly same foundation listed on a tax return that she filed.  <u>See</u> Gov't Mem. at 7-

8.[3]

        Accordingly, the Government submits that Subject E should be ordered to demonstrate,

on an <u>ex parte</u> and <u>in camera</u> basis, that she is not subject to requirements of Section 1010.420.

If Subject E makes such a showing, the Government is prepared to rebut that showing, also on an

<u>ex parte</u> and <u>in camera</u> basis.

        Such a procedure is perfectly appropriate under the circumstances.  <u>See</u> <u>In re Grand Jury</u>

<u>Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 386 (2d Cir. 2003)

(describing the presentation of documents for in camera review as a "practice both long-standing

and routine in cases involving claims of privilege" and citing illustrative cases); <u>United States v.</u>

<u>Wolfson</u>, 55 F.3d 58, 60-61 (2d Cir. 1995) (noting, in the criminal context, that "the prescribed

procedure for resolving [a] dispute [as to whether certain confidential documents are subject to

discovery] is to provide the documents to the district court for in camera review" and that "[t]he

district court normally returns such documents to the party that submitted them in camera ");

<u>Estate of Fisher v. Commissioner</u>, 905 F.2d 645, 650 (2d Cir. 1990) ("When the incriminatory

---

        [3] Several people identified on the Client List were served with subpoenas substantially
identical to the one served on Subject E and several people on the Client List have pleaded guilty
to crimes arising out of their overseas bank account in this District and others.

potential of a discovery request is not clear on its face, an in camera conference is consonant with the notion that a witness need not surrender 'the very protection that the privilege is designed to guarantee' in order to invoke it."); see AAOT Foreign Economic Ass'n (VO) Technostroyexport v. Int'l Dev't & Trade Servs., Inc., No. 96 Civ. 9056 (JGK) (AJP), 1998 WL 633698, *9-10 (S.D.N.Y. Sept. 15, 1998), adopted in part & rejected in part, 1999 WL 970402 (S.D.N.Y. Oct. 25, 1999).

## V.   Conclusion

For the reasons set forth above, the Court should grant the Government's motion to compel compliance with Subpoenas A through D.

As for Subpoena E, the Court should order Subject E to make an ex parte in camera submission demonstrating why Subject E falls outside the record-keeping requirements of Section 1010.420, which, if necessary, the Government should then be permitted to rebut in a responsive ex parte and in camera submission.

Dated:   New York, New York
         December 21, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
Daniel W. Levy/David B. Massey/
Jason H. Cowley
Assistant United States Attorneys
Telephone: (212) 637-1062/2283/2479

**CERTIFICATE OF SERVICE**

DANIEL W. LEVY, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

      1.    I am an Assistant United States Attorney in the office of Preet Bharara, United States Attorney for the Southern District of New York.

      2.    On December 21, 2012, I caused a true and correct copy of the foregoing Reply Memorandum of Law, together with the appendix hereto, to be served by overnight mail upon:

> Richard A. Levine, Esq., Roberts & Holland LLP, 825 Eighth Ave., New York, NY 10019;
>
> Alain Leibman, Esq., Fox Rothschild LLP, 997 Lenox Dr., Bldg. 3, Lawrenceville, NJ 08648; and
>
> Caroline Rule, Esq., Kostelanetz & Fink LLP, 7 World Trade Center, New York, NY 10007

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 21, 2012, at New York, New York.

Daniel W. Levy