

Fox Rothschild LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Alain Leibman
Direct Dial:  (609) 895-6743
Email Address:  aleibman@foxrothschild.com

November 7, 2016

**_VIA ECF_**
Hon. William H. Pauley III, U.S.D.J.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    In re Various Grand Jury Subpoenas
                12 Misc. 381 (WHP)

Dear Judge Pauley:

      On behalf of Subject E, our client, we write in strenuous objection to the Government's submission minutes ago of an unbidden, unwarranted, post-hearing submission resolving none of the central issues presented to the Court and heard at length on November 3rd.  Our client is, to use a phrase uttered by the Court at that hearing, the subject of a "punitive" contempt motion brought belatedly by the Government six years after the subject subpoena was issued and fully four years after this Court's first order, upon which the Government purports to ground the present motion.  The Government both filed an initial motion (Doc. #42, 26 pps.) and a reply brief (Doc. #50, an overlong 15 pps.).  No provision was made in the Court's scheduling order for further briefing by either party.  The Court did not request further briefing at the conclusion of the hearing.  And the Government did not even request the permission of the Court to make a further filing.  Yet, the Government has the temerity to make this filing purporting "to clarify several facts proffered [by the Government]" at the hearing. Letter of Jared Lenow, AUSA, Nov. 7, 2016, Doc. #56.  It seemingly relies on grand jury proceedings which occurred **_four months before we appeared in this Court,_** and so was well known to Mr. Lenow, if unmentioned by him, at the hearing.

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia    Florida
Illinois    Nevada    New Jersey    New York    Pennsylvania    Texas



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. William H. Pauley, III, U.S.D.J.
November 7, 2016
Page 2

To say this is outrageous would constitute no overstatement.  Sadly though, it is of a part with other outrages exhibited by the Government, both in its filings and at oral argument, including:

(a) misleading the Court into believing that Subject E had somehow denied the grand jury bank statements of a certain foreign bank account in France (held openly in Subject E's own name and in Subject E's true New York resident address).  As demonstrated by Subject E's counsel at the hearing, Mr. Lenow's motion and reply deliberately failed to advise the Court that in 2011 the Government knew precisely of this account and its location, sought those very statements from the relevant French authority, and years prior to filing this motion had obtained the very statements claimed to have been withheld and had them available for the grand jury, and then argued on the basis of that (falsely) claimed withholding to justify punitive sanctions against Subject E.

Standing alone, the rank dishonesty exhibited by the prosecutor to this Court would be notable.  When I was a supervisor in a different U.S. Attorney's Office, such an unthinkable failure of candor would be brought to the attention of the U.S. Attorney himself/herself for action.  But to combine that falsity with a concomitant demand that this Court then punish Subject E based on falsified information is misconduct of the highest order.

What a post-hearing letter from Mr. Lenow should have contained, rather than continued, improper argument, is an abject apology to the Court and to opposing counsel for failing to adhere to a fundamental requirement of truth-telling.  I cannot speak for the Court, but we are still waiting to hear that apology.

(b) accusing me of being in cahoots of some kind with one Beda Singenberger, whom the Government apparently believes to be a wrongdoer (but who, paradoxically, is said in Mr. Lenow's post-hearing submission actually to have advocated that his American clients voluntarily identify themselves to the IRS, pay penalties, and join the IRS's offshore voluntary disclosure program, or OVDP, as Mr. Lenow's letter puts it.  That sounds to this reader as if Mr. Singenberger was advocating tax compliance, not evasion, but the Government's theory of the case is a mystery in so many respects).  To be sure, Mr. Lenow did apologize at the hearing for falsely accusing me of ever meeting or even knowing Mr. Singenberger.  While the apology is appreciated, that Mr. Lenow – part of a six-year grand jury investigation and responsible for indicting Subject E in a pending criminal case in the S.D.N.Y. -- has so loose an understanding of facts fundamental to this case is exceedingly discomforting.



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. William H. Pauley, III, U.S.D.J.
November 7, 2016
Page 3

     (c) the Government's initial motion at least acknowledges that as to the Subject E Foundation it already possesses hundreds of pages of records, including bank statements. Indeed, at the hearing, this Court observed that the complete overlap between the sanctions motion and the indictment appeared to indicate that the grand jury had full information about this matter.

     The Government made no showing at the hearing that Subject E either possessed, possesses, or necessarily would have possessed such records at any time, while the Bank Secrecy Act (imposing a requirement only to "keep" certain bank records only) and the "required records" regulation ("maintain" certain bank records only) only speak to possession, not any attenuated opportunity to make requests of third parties. While Mr. Lenow argued that Subject E has an obligation to go out into the world and try to obtain such records, the position was offered without a single case in support and in contravention of the statute and regulation which narrowly caused the records-**possession** requirement to survive the Fifth Amendment. Our opposition brief takes on every single, almost entirely civil, authority cited by the Government – *not one solitary case supports the claim of an enforceable obligation to turn a subpoena respondent, asserting her Fifth Amendment privilege (and now under indictment, to boot) into an agent of the grand jury seeking to charge her.* The "required records" exception must, as we argued, be narrowly construed, since it acts in derogation of the Fifth Amendment. The Government, instead, seeks its expansion in a way which neither the Second Circuit nor any other court has countenanced; that might be an interesting law review article if someone would choose to write one, but it is an impossible position for a Court to adopt as a basis for sanctions.

     Mr. Lenow's unprecedented post-hearing letter also appears intended to make the point that because some persons entering the OVDP could obtain their foreign entity records, so must Subject E on pain of punishment be ordered to do so. The argument is entirely off the mark. First, it mirrors a similar argument made by Mr. Lenow at the hearing about the kinds of records which cooperating taxpayers have over the years provided to the IRS. Like the version offered at the hearing, it, too, is over-simple and facile. The issue here is not whether in a physical sense it is possible to obtain records from a foreign entity. Cooperating individuals highly motivated to please the Government will sometimes go to great lengths to demonstrate their desire and to avoid jail. A defendant may also of course choose to do those sorts of non-required actions: speak to police or to the IRS or to testify notwithstanding their Fifth Amendment privilege to refrain from doing so. That some persons, for their own motivations, voluntarily undertake burdens and waive privileges says nothing at all about whether, *in the absence of any legal authority for imposing that burden involuntarily*, Subject E may on threat of punishment be forced to try. That, after all, is the point of the Fifth Amendment, to protect the individuals against overbearing authorities, and that the Government does not see that is frightening.



Fox Rothschild LLP
ATTORNEYS AT LAW

Hon. William H. Pauley, III, U.S.D.J.
November 7, 2016
Page 4


This is not a civil case turning on a question of discovery; this is a criminal matter in which the Government is improperly attempting to use an instrument of compulsion – a subpoena – which is unavailable to it against a defendant in the overlapping criminal case.

Second, that other persons, whose unique relationship to a unique trust structure, could or would obtain records again says nothing at all to the standing of a different individual in the context of a different structure, one which was not established to benefit Subject E nor as to which is she not a sole, or even now first-line, beneficiary, as the criminal trial will demonstrate.

In conclusion, I was convinced at the hearing, and did my level best to convey with the utmost respect to a seasoned Court, that the Government has attempted to lead the Court onto very thin ice.  It not only has misled the Court in an effort to make the imposition of sanctions appear somehow more justified, but it has supplied the Court with no legal authority for the relief it seeks.

Again, and perhaps even bolstered by this latest demonstration that the Government's ethical compass and its obligation to adhere to the law has severely gone awry, we ask that the motion be denied.

Respectfully yours,

Alain Leibman

AL/bc
cc.    AUSA Jared Lenow (via ECF)
       Matthew S. Adams, Esq. (via ECF)