```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
In re:                              :    12 Misc. 381
                                    :
VARIOUS GRAND JURY SUBPOENAS        :    OPINION AND ORDER
                                    :
------------------------------------X
```

WILLIAM H. PAULEY III, District Judge:

        Respondent Subject E renews her motion to purge contempt. For the following reasons, Subject E's motion is denied without prejudice, and the commencement of sanctions is suspended until April 24, 2017.

## BACKGROUND

        On January 24, 2017, this Court held Subject E in civil contempt, and imposed sanctions to take effect at a later date, for her failure to obtain and produce bank records pursuant to a grand jury subpoena (the "Sanctions Order"). See In re Various Grand Jury Subpoenas, 2017 WL 361685 (S.D.N.Y. Jan. 24, 2017). On February 8, 2017, Subject E moved to purge contempt claiming that she had fully complied with the chief directive of the Sanctions Order—to "locate and produce all foreign bank account records responsive to the 2010 Subpoena that she has the legal authority or practical ability to obtain." In re Various Grand Jury Subpoenas, 2017 WL 361685, at *7. This Court denied Subject E's motion, holding that she did not exhaust her ability to obtain documents from certain foreign banks, and failed to demonstrate plainly and unmistakably that compliance with the Sanctions Order was impossible. In re Various Grand Jury Subpoenas, 2017 WL 564676, at *2 (S.D.N.Y. Feb. 13, 2017) (the "Suspension Order"). Nevertheless, because it appeared Subject E had undertaken good faith steps to comply with the

subpoena, this Court suspended the commencement of sanctions to allow her another opportunity to achieve full compliance.

On March 29, 2017, Subject E renewed her motion to purge contempt, claiming that she took "every step required . . . to secure, and turn over to the Government, 'required records.'" (Respondent's Memo. of Law in Support of Renewed Motion to Purge Contempt and Vacate Contempt Citation ("Mot."), at 11.) Subject E's motion catalogues the additional steps undertaken to obtain and produce records—e.g., the issuance of directives to several foreign banks, subsequent discussions with bank representatives, and productions to the Government.

The Government opposes Subject E's request, and identifies a discrete category of documents relating to a "Swiss bank account"—at Credit Suisse—"held directly in Subject E's name" and "held by the Subject E Foundation" that Subject E failed to produce. (Government Response Ltr. dated Mar. 30, 2017 ("Opp."), ECF No. 71, at 1–2; Hearing Transcript dated Mar. 31, 2017 ("Tr."), at 22:16–17 ("We believe that the 2005 and 2006 missing documents are Credit Suisse documents.")) According to the Government, they are "key documents that relate to critical and central subjects of the ongoing grand jury investigation: the circumstances surrounding the establishment of the Subject E Foundation, the source of its funds, and who was involved." (Opp. at 1.) Based on the parties' submissions, it appears that the Credit Suisse documents were not produced because Subject E refused to sign the bank's version of the consent directive. (Opp. at 2.)

Subject E counters that the type of consent directive mandated by Credit Suisse— either the one drafted by Credit Suisse's counsel or the standard form typically executed by Credit Suisse clients who wish to obtain copies of their account records—would risk violating her Fifth Amendment testimonial privilege. More specifically, citing In re N.D.N.Y. Grand Jury

Subpoena, 811 F.2d 114 (2d Cir. 1987) ("In re Alexander"), Subject E contends that because the Credit Suisse directive fails "to indicate that it . . . [is] executed under compulsion of court order," signing it would, among other issues, create a testimonial communication that could be used against her in a pending criminal trial.  (Tr. at 9:3–9.)

DISCUSSION

In civil contempt cases, the "opportunity to purge is essential."  CBS Broadcasting Inc. v. FilmOn.com, Inc., 814 F.3d 91, 101 (2d Cir. 2016).  The imposition of sanctions tied to a finding of civil contempt is appropriate only after the contemnor has had an opportunity to purge.  See CBS Broadcasting, 814 F.3d at 102.  Indeed, the Second Circuit recognized that "repeated findings of contempt, with proper notice of daily prospective fees, provide[] [a] defendant with an adequate opportunity to purge."  CBS Broadcasting, 814 F.3d at 102.  And that comports with the "underlying concern of protecting the due process rights of parties and prevent[ing] the arbitrary exercise of judicial power."  CBS Broadcasting, 814 F.3d at 102 (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 834 (1994)).

Here, Subject E has had at least two opportunities to purge contempt—once after issuance of the Sanctions Order and another time following entry of the Suspension Order.  On each occasion, Subject E took a number of steps to comply with the grand jury subpoena, making productions of some, but not all, "required records" to the Government.  But a good faith effort to comply does not amount to full and actual compliance.  The Government claims, and Subject E does not dispute, that a discrete category of documents—Credit Suisse records dating to the 2005 and 2006 period—which clearly fall within the ambit of the grand jury subpoena have not been produced.

3

I. <u>The Consent Directive Does Not Violate the Fifth Amendment</u>

Subject E takes issue with the form of the Credit Suisse consent directive (the "CS Directive"), claiming that it omits a critical phrase—that her directive to produce records is made pursuant to a court order—and that such omission violates her Fifth Amendment testimonial privilege. She cites <u>In re Alexander</u> and <u>In re Grand Jury Subpoena, Two Grand Jury Contemnors</u>, 826 F.2d 1166 (2d Cir. 1987) ("<u>Two Contemnors</u>"), in support of her position that the "directive itself violates [her] Fifth Amendment privilege against being compelled to give the government testimonial evidence, evidence that respondent controls or has accounts there, evidence that the respondent authenticates the resulting production." (Tr. at 25:3–7.)

But those two decisions do not stand for the proposition that omitting a representation from the consent directive that it is "being executed under compulsion of court order" (Tr. at 9:8–9) violates the Fifth Amendment. In fact, <u>In re Alexander</u> expressly "ma[de] clear that [its] holding is not founded on constitutional grounds, but merely upon [the Court of Appeal's] supervisory authority over the district courts." <u>In re Alexander</u>, 811 F.2d at 118. There, the Second Circuit held that a consent directive either omitting that it is issued pursuant to a court order or under protest would "offend[] basic precepts of honest behavior by invoking the district court's imprimatur on a document that would be misleading"—the imprimatur being the district court's order coercing the contemnor to sign a directive that is not entirely accurate. <u>In re Alexander</u>, 811 F.2d at 117–18. And <u>Two Contemnors</u> held the same, essentially adopting the holding of <u>In re Alexander</u>—that "so long as a directive indicated that it was signed under protest <u>or</u> pursuant to a district court order, it would not be considered misleading"—but said it provided no basis for a Fifth Amendment violation. 826 F.2d at 1171.

4

In both cases, the consent directives at issue did not "implicate any testimonial communication" or "impair [a contemnor's] rights under the [F]ifth [A]mendment" so long as they "employ[ed] language [] requir[ing] disclosure only <u>if</u> the bank has such accounts." <u>In re Alexander</u>, 811 F.2d at 117 (emphasis original); <u>Two Contemnors</u>, 826 F.2d at 1170 ("the directives here . . . do not contain any assertions by appellants regarding the existence of, or control over, foreign bank accounts. They authorize disclosure of records and information only if such accounts exist.") (citing <u>United States v. Ghidoni</u>, 732 F.2d 814, 819 (11th Cir. 1984)).

Here, although the CS Directive omits any reference to this Court's Sanctions Order, it is not testimonial in nature because it seeks disclosure of documents only if the bank has "any account" held in Subject E's name or held for the benefit of the Subject E Foundation. (<u>See</u> Ex. A; <u>Compare</u> Opp., Ex. A and Ex. B ("I hereby instruct and authorize [the bank] to disclose copies of any and all account records in [the bank's] possession . . .") <u>with</u> <u>In re Alexander</u>, 811 F.2d at 115 ("I . . . hereby authorize and direct any bank . . . at which I have or have had an account of any kind . . . to disclose all information").) The directives at issue are "drafted not to make reference to a specific account . . . the form does not acknowledge that an account in [the] foreign financial institution is in existence or that it is controlled by [Subject E]. Nor does the form indicate whether the documents or any other information relating to [Subject E] are present at the foreign bank, assuming that such an account does exist." <u>Doe v. United States</u>, 487 U.S. 201, 215 (1988).

And, while the language of the CS Directive (or the standard directive signed by other Credit Suisse accountholders) does not make clear whether the accountholder in question actually maintains, or has maintained, an account with the bank, the facts in this proceeding differ materially from <u>In re Alexander</u> and <u>Two Contemnors</u> because the parties already know

5

that such accounts <u>do</u> exist. According to the Government, "Subject E's counsel apparently [] receive[d] an incomplete set of account documents" that were mistakenly produced by Credit Suisse. (<u>See</u> Opp. at 2, n.1.) Thus, the potential risk of a Fifth Amendment violation arising from what Subject E believes is a flawed consent directive—i.e., "evidence that respondent controls or has accounts there, evidence that the respondent authenticates the resulting production" (Tr. at 25:5–7)—is mitigated in view of Credit Suisse's inadvertent production of an incomplete set of documents.

Further, the cases cited by Subject E involved directives seeking the disclosure of "<u>all information</u> and [] copies of all documents of <u>every nature</u> in the possession or control of such bank." <u>In re Alexander</u>, 811 F.2d at 115 (emphasis added); <u>see also</u> <u>Two Contemnors</u>, 826 F.2d at 1166 (disclosure of "information and documents relating to accounts maintained by appellants"). The breadth of records sought in those cases is far more expansive than the "required records" the Government seeks here. (<u>See</u> Tr. at 19:14–17 ("one of the reasons we went down this route of required records doctrine is because under that doctrine there is no Fifth Amendment protection").) That makes the risk of a Fifth Amendment violation resulting from a testimonial communication acknowledging the existence of, or control over, incriminating, testimonial documents that much more remote—the documents requested, if they exist at all, by their nature do not have independent communicative elements.[1]

---

[1] This Court has already ruled—on more than one occasion—that the required records sought by the grand jury subpoena fall into an exception to the act of production privilege because they are regulatory in nature and lack the independent communicative aspects that an act of production privilege is designed to protect. <u>In re Various Grand Jury Subpoenas</u>, 924 F. Supp. 2d 549, 553 (S.D.N.Y. 2013) (required records doctrine precludes application of the act of production privilege); <u>In re Various Grand Jury Subpoenas</u>, 2017 WL 361685, at *7 (required records, "by their very nature, bear no independent communicative element and therefore do not present the risk of self-incrimination under the Fifth Amendment."). And the Second Circuit and district judges have ruled similarly, holding that required records are categorically exempt from the act of production privilege. <u>In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985</u>, 793 F.2d 69, 73 (2d Cir. 1986) (required records "exception overrides the privilege against self-incrimination in situations in which the privilege would otherwise apply; that is, even if the compelled act of producing the required records might be testimonial and incriminating."); <u>In re Grand</u>

II.     Subject E Must Obtain the Records in Question

Subject E claims that the "only reasonable way that someone can get a foreign bank record is by making a request of the foreign bank." (Tr. at 23:4–5.) Short of that, she contends that she must resort to "mentally teleport[ing]" the records, or "travel to Europe and knock on doors like beggars for alms." (Tr. 23:1–3.) Subject E dramatically overstates the paucity of alternatives available to her.

A reasonable option, as suggested by the Government, would be for Subject E to direct the "officers of the Subject E Foundation [to] execute additional directives" to Credit Suisse. (Opp. at 2.) Indeed, it appears from Subject E's renewed motion that Subject E employed that method for other banks—"request[ing] [Subject E Foundation] to contact, and cooperate with, [the foreign bank] in order to ensure full disclosure by the bank of any 'required records' as to any [Subject E Foundation] account"—and representatives of Subject E Foundation have complied. (Mot. at 9.) Of course, Subject E and her counsel are free to explore other methods to obtain the documents at issue. But to be clear, this Court has not and is not directing Subject E to sign any CS Directive. Nor is it directing Subject E to choose any particular method to secure the documents that she has the legal and practical ability to obtain.

In any event, the authorities cited by Subject E hold that signing such a consent directive <u>does not</u> violate the Fifth Amendment. Executing the form "has no testimonial significance"—by "signing the form, [Subject E] makes no statement, explicit or implicit, regarding the existence of a foreign bank account or [her] control over any such account. Nor

---

Jury Subpoena Dated February 2, 2012, 908 F. Supp. 2d 348, 353 (E.D.N.Y. 2012) (required records "may be deemed a waiver of the act of production privilege, at least in cases in which there is a nexus between the government's production request and the purpose of the record-keeping requirement."); United States v. Gendreau, 2014 WL 464754, at *3 (S.D.N.Y. Jan. 22, 2014) ("This Court held that records account holders are required to keep under the Bank Secrecy Act are not protected by the act of production privilege.").

7

would [her] execution of the form admit the authenticity of any records produced by the bank." Doe, 487 U.S. 215–16.

What is clear, at this juncture in the proceedings, is that Subject E has not produced relevant documents "from 2005 and 2006 relating to an account held in [her name], and account balance statements and related documents from 2006 for an account held by the Subject E Foundation."  (Opp. at 1.)  Subject E has already demonstrated that she has the legal and practical ability to obtain records of accounts at foreign banks, including Credit Suisse.  Therefore, to satisfy her obligations under the subpoena, Subject E must produce these documents before the contempt can be purged.

Accordingly, this Court provides Subject E with another opportunity to comply with her obligations under the subpoena and purge her contempt.  See CBS Broadcasting, 814 F.3d at 102.  This Court is persuaded that the threat, or imminence, of sanctions is an effective tool to assure Subject E's compliance.  But if Subject E is unable to comply by April 24, 2017, sanctions will commence thereafter.

## CONCLUSION

For the foregoing reasons, Subject E's renewed motion to purge contempt and vacate the contempt citation is denied without prejudice.  The sanctions period, originally scheduled to commence on April 3, 2017, is suspended until after April 24, 2017, to allow Subject E to complete her obligations under the grand jury subpoena.  The Clerk of Court is directed to terminate the motion pending at ECF No. 70.

Dated: April 3, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

8