**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648
Telephone:  (609) 896-3600
Facsimile:  (609) 896-1469
*Attorneys for Respondent (Subject E)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VARIOUS GRAND JURY SUBPOENAS | 12 Misc. 381 (WHP) <br><br> **DECLARATION OF ALAIN LEIBMAN IN SUPPORT OF <u>CONCLUDING</u> PURGE MOTION** |

**ALAIN LEIBMAN**, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am an attorney at law, admitted to the Bar of this Court, and a member of the

firm of Fox Rothschild LLP, counsel for Respondent.  I offer this Declaration in support of

Respondent's concluding motion to purge her of contempt and to vacate the contempt citation

imposed by this Court by Opinion and Order entered on January 24, 2017 (Doc. #60).

2.      For the sake of a clear record, we incorporate by reference, and rely upon, the

following prior sealed Declarations of counsel and the exhibits attached to each: (a) Declaration

of Alain Leibman, dated February 8, 2017, and attached Exhibits A-K; and (b) Declaration of

Alain Leibman in support of renewed purge motion, dated March 29, 2017, and attached

Exhibits L-W.  The exhibits hereto follow and continue the exhibit-designation protocol used in

the prior Declarations.

3.      Attached hereto as Exhibit X is a copy of a letter dated February 16, 2017 from the American counsel for Credit Suisse bank, concerning a disclosure Directive served on the bank from Respondent; the letter from the bank's counsel attaches a form of Credit Suisse "Template Account Records Instruction."

4.      Attached hereto as Exhibit Y is a copy of a letter dated February 28, 2017 from the same American counsel for Credit Suisse bank; the letter attaches a different form of "Directive."

5.      Attached hereto as Exhibit Z is a copy of a letter dated April 10, 2017 from Respondent's counsel to the American counsel for Credit Suisse bank (omitted notarized passport enclosure to the letter).

6.      Attached hereto as Exhibit AA is a copy of a letter dated April 12, 2017 from the same American counsel for Credit Suisse bank.

7.      Attached hereto as Exhibit BB is a copy of an Account Records Instruction to Credit Suisse bank from the President of Gestino Stiftung, referencing a February 17, 2017 letter from the undersigned's law firm, Fox Rothschild LLP.

8.      Attached as Exhibit CC is a copy of the undersigned's letter, dated February 17, 2017, and referenced in the preceding exhibit, to Gestino Stiftung, relaying Respondent's request that Gestino Stiftung cooperate with and provide any necessary authority to Credit Suisse enabling the bank to comply with Respondent's earlier Directive to it.

9.      Attached as Exhibit DD is a copy of a Plea Agreement filed on May 19, 2014 in the matter of *United States of America v. Credit Suisse AG,* Crim. No. 1:14-cr-188, in the Eastern District of Virginia.

10.     Attached as Exhibit EE is a copy of the Department of Justice's Program for Non-Prosecution Agreements of Non-Target Letters for Swiss Banks, portions of which – relating to obligatory disclosures of bank account information and evidence -- are incorporated by reference into the Credit Suisse Plea Agreement comprising the preceding exhibit.

11.     The discovery provided in the criminal case of *United States v. Lacy Doyle,* Cr. No. 16-506 (ALC), by the same prosecutor as in this matter includes numerous Credit Suisse entity and individual records going back to 1995 (e.g., USLD 229-374, representing the Government's production numbers), which were obtained by the Government without any action on the part of Respondent.

I declare under penalty of perjury that the foregoing is true and correct.


_____
ALAIN LEIBMAN
Bar # AL8971

DATED: April 17, 2017

# EXHIBIT X

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Andrew C. Hruska
Direct Dial: +1 212 556 2278
Direct Fax: +1 212 556 2222
ahruska@kslaw.com

February 16, 2017

**BY EMAIL & FEDERAL EXPRESS**

Alain Leibman, Esq.
Fox Rotschild LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648

Re:     **Credit Suisse Account Records**

Dear Mr. Leibman,

On behalf of my client, Credit Suisse AG ("*Credit Suisse*"), and per our recent discussion, I am responding to your request for written instructions regarding the procedure for directing Credit Suisse to disclose Swiss-based account records to clients of the bank. We are also in receipt of your letter to Kyle Sheahen dated February 15, 2017 concerning this matter.

Pursuant to Swiss banking secrecy law, only current or former account holders, their legal successors, or their duly authorized representatives are entitled to account information. With respect to an account held in the name of a natural person, such an individual must execute a written, notarized instruction to Credit Suisse according to the enclosed template. The instruction must also include a notarized passport copy of the individual account holder.

For an account held by an entity or corporate structure that is extant (*i.e.*, has not been dissolved or wound down), an authorized signatory for that entity must execute a written, notarized instruction to Credit Suisse according to the enclosed template. Please note that if such entity or corporate structure has moved its registered office to a new jurisdiction, the authorized signatory must also submit evidence showing that the current entity previously was located in a different jurisdiction. Additionally, the signatory must submit a notarized excerpt from the competent corporate registry in the jurisdiction where the entity currently is domiciled demonstrating that the company is extant (*e.g.*, a certificate of good standing or similar document, as applicable in the relevant jurisdiction). Such an excerpt must evidence that the signatory submitting the instruction has the power to do so. Finally, the signatory must include a notarized passport copy.

Alain Leibman, Esq.
February 16, 2017
Page 2

     If a former account holder was a legal entity that has since been dissolved or wound down, the former beneficial owner(s) or their duly authorized representatives may request account information for specific purposes, such as participation in a tax voluntary disclosure program. Such a request must be in writing according to the enclosed template and include certified passport copies of all beneficial owners. The request must also include an official, notarized certificate demonstrating that the legal entity that was the former account holder has been dissolved.

     In certain cases, additional documents or information may be required to disclose Swiss-based account records. Please also note that, by virtue of this letter, Credit Suisse does not purport to make any statement concerning whether Gestino Stiftung or ████████████ are or were clients of Credit Suisse at any time.

     Finally, with respect to your February 15, 2017 letter, thank you for your confirmation that you may accept documents on behalf of your client.

     If you have any questions regarding this matter, please call me at 212.556.2278.

Very truly yours,

Andrew C. Hruska

Enclosure:    Template Account Records Instruction

## TEMPLATE ACCOUNT RECORDS INSTRUCTION

[Date]

From: [Client/Signatory/Beneficial Owner Full Name]
[Client/Signatory/Beneficial Owner Full Address]

To: Credit Suisse AG
8050 Zürich
Switzerland

Dear Sir or Madam:

My full name is [Client/Signatory/Beneficial Owner] and my date of birth is [X]. I hereby instruct and authorize CREDIT SUISSE AG to disclose copies of any and all account records in CREDIT SUISSE AG's possession relating to the account(s) (i) held in my name or (ii) in the case of a legal entity, for which I am director and/or beneficial owner and/or have individual signing authority (the "Accounts"), from the time of the account opening through the present as follows (the "Account Records"):

a) documents identifying the account holder, the beneficial owner and/or authorized persons;

b) account opening documents and further formalities, if any;

c) correspondence between the bank and the account holder;

d) any bank-internal documents pertaining to the Accounts that I as client, director, beneficial owner, and/or signatory am legally entitled to receive; and

e) annual account statements and statements of assets.

Enclosed are [Documentation]. You have my direct authorization to provide all documents to [Legal Representative(s)] by mail, email, or facsimile. [Legal Representative(s)] can be reached at:

[Legal Representative(s) Address]

I hereby waive all protections provided under the terms of all contractual arrangements with CREDIT SUISSE AG relating to the Account(s) and under the data protection, financial privacy, and/or bank secrecy laws of Switzerland.

I instruct CREDIT SUISSE AG to follow these instructions until revoked by myself expressly and in writing. I confirm that I have consulted with specialized counsel, and that I am aware of the consequences that these instructions could have.

If you have any questions concerning this matter, please contact my [Legal Representative(s)] in writing at the address and/or email provided. Thank you for your assistance.

# EXHIBIT Y

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Andrew C. Hruska
Direct Dial: +1 212 556 2278
Direct Fax: +1 212 556 2222
ahruska@kslaw.com

February 28, 2017

**BY EMAIL & HAND DELIVERY**

Alain Leibman, Esq.
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648

        Re:     **Credit Suisse Account Records**

Dear Mr. Leibman,

        We received your letter dated February 17, 2017 concerning Credit Suisse AG ("*Credit Suisse*") account records.

        In order to disclose account records for any individual accounts held in ███████'s name or active accounts over which ████████ has a current power of attorney, should any such accounts exist at Credit Suisse, ███████ must execute and notarize the enclosed revised directive and return it along with a notarized copy of her current passport.

        The revised directive is identical to ████████'s original directive to Credit Suisse dated February 1, 2017 except that it removes (1) the reference to the January 24, 2017 court order and (2) the request to disclose records directly to the U.S. Department of Justice. Under Swiss law, Credit Suisse cannot respond to the February 1, 2017 directive with those provisions included.

        Please note that, by virtue of this letter, Credit Suisse does not purport to make any statement concerning whether ████████ is or was a client of Credit Suisse at any time.

        If you have any questions regarding this matter, please call me at 212.556.2278.

Alain Leibman, Esq.
February 28, 2017
Page 2

Very truly yours,

Andrew C. Hruska

Enclosure:    Revised Directive

<u>DIRECTIVE</u>

I, ██████████ of the State of ████████ in the United States of America, do hereby direct Credit Suisse ("the Bank") to disclose certain records listed below as to any account (i) held in my name, jointly or individually, or over which I had a power of attorney, or (ii) held in the name of Gestino Stiftung, or Gestino Foundation, a trust of which I have been either a beneficiary or a conditional beneficiary.

<u>Records to be disclosed</u>:

For the period January 1, 2005 through December 31, 2016, any records which (a) contain the name in which each such account is maintained, (b) the number or other designation of such account, (c) the name and address of the foreign bank or other person with whom such account is maintained, (d) the type of such account, and (e) the maximum value of each such account in each calendar year.

I request that disclosure of any qualifying records set forth above be made to my attorney, Alain Leibman, Esq., Fox Rothschild LLP, 997 Lenox Drive, Lawrenceville, New Jersey 08648, and I authorize Mr. Leibman to transmit this Directive to the Bank on my behalf. I agree to be responsible for any reasonable costs associated with the disclosure by the Bank.

I make no representation that I exercise or exercised control over the subject accounts, except for any accounts in my name or over which I held a power of attorney.

This Directive is intended to apply to the privacy and banking laws of any jurisdiction applicable to the Bank's activities and shall be construed as consent with respect thereto with regard to disclosure of records listed above.

_____                         DATED:_____
██████████████

Witnessed:

# EXHIBIT Z



**Fox Rothschild** LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Alain Leibman
Direct Dial:  (609) 895-6743
Email Address:  aleibman@foxrothschild.com

April 10, 2017

***VIA EMAIL AND REGULAR MAIL***

Andrew Hruska, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

      **Re:**    █████████ **– directive to Credit Suisse re bank records**

Dear Mr. Hruska:

By letter dated February 2, 2017, I forwarded to two offices of Credit Suisse in Switzerland a broad directive from my client, █████████ for disclosure of certain records concerning certain qualified accounts, as compelled by Court order (the "Directive to Credit Suisse"). Your office thereafter reached out to me, and we held a telephone conference on February 14th, followed by an exchange of correspondence.

I write once again to bring closure to this issue and, if at all possible, successfully direct Credit Suisse to produce any further records, assuming it possesses further records beyond those already produced by the bank, which fall under the Directive to Credit Suisse.

The Directive to Credit Suisse, as I explained earlier, was executed by my client in compliance with a court Order, as it candidly stated. It broadly defined the types of accounts for which records were sought; it framed the time period in question (January 1, 2005 to December 31, 2016); and it described the nature of the bank records which would comply in terms of the so-called "required records" description contained presently in 31 C.F.R. § 1010.420.

In response, you initially insisted that my client sign a standard Credit Suisse "Template Account Records Instruction" without which, you advised, the bank could not respond to the



Fox Rothschild LLP
ATTORNEYS AT LAW

Andrew Hruska, Esq.
April 10, 2017
Page 2

Directive to Credit Suisse (*see* your letter of February 16, 2017, with attachment).[1] As I explained in response (*see* my letter of February 17, 2017), the bank's Template was objectionable in various respects.  Then, you provided a revised document entitled simply "Directive," which purported to be identical to the original Directive to Credit Suisse, except that, as you explained, it "removes (1) the reference to the January 24, 2017 court order and (2) the request to disclose records directly to the U.S. Department of Justice." (*See* your letter of February 28, 2017, with attachment).   You also required a notarized copy of my client's current passport.  (*Ibid.*).

I had by that time already amended by letter the Directive to Credit Suisse to provide for production of any responsive records to me.  I now enclose a notarized copy of the passport, which required the cooperation of the prosecutor to secure, as my client no longer has possession of her original, current passport.

However, my client will not execute any directive (or template, or waiver, the nomenclature being immaterial) to Credit Suisse which does not include a statement reflecting that the directive is being executed and provided pursuant to the compulsion of court Order. Omitting such a statement would "conceal the true nature" of the directive and would "offend[] basic precepts of honest behavior," and the enforcement of such an omission by any court would "invok[e] the district court's imprimatur on a document that would be misleading."  *In re N.D.N.Y. Grand Jury Subpoena (Alexander)*, 811 F.2d 114, 117-118 (2d Cir. 1987).

I would point out that four other Swiss banks which received identical directive and which are represented by American counsel, responded to those directives, including as to any accounts in my client's name; they did so without objection to the inclusion of the foregoing statement attributing the execution of the directive to compulsion of court Order and without contending that the inclusion of this truthful assertion somehow impaired their banks' ability under Swiss law to provide responsive records or information.

My client remains highly desirous that Credit Suisse produce all records responsive to the Directive to Credit Suisse.  But my client will not execute a false and misleading document – that is, one which fails to note the compelled origin of the directive – in order to satisfy the only Swiss bank which has characterized such a statement as an impediment to production.

---

[1] Notwithstanding your blanket statement, Credit Suisse did in fact respond to the Directive to Credit Suisse, and it did so by producing bank records both as to an account in the name of Gestino Stiftung (from apparent inception in February 2006 to 2009) and an account in the name of ████████████████ (from 1995 to 2009).  Those records did not come through your firm but, rather, directly from the bank in Switzerland, and were immediately re-transmitted to the Government by me.



Fox Rothschild LLP
ATTORNEYS AT LAW

Andrew Hruska, Esq.
April 10, 2017
Page 3

I would ask that you reconsider the position uniquely taken by this bank and relent to include in your February 28th form of directive the statement which appears in our original: "I provide this directive in compliance with an Order entered by a United States District Judge in the Southern District of New York on January 24, 2017." If such a provision is included, then my client is prepared to sign the directive as you have otherwise proposed it.

Please let me hear from you as early as possible. Thank you.

Very truly yours,

Alain Leibman

AL/bc
Enc.

# EXHIBIT AA

# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Andrew C. Hruska
Direct Dial: +1 212 556 2278
Direct Fax: +1 212 556 2222
ahruska@kslaw.com

April 12, 2017

**BY EMAIL**

Alain Leibman, Esq.
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648

   Re:  **Credit Suisse Account Records**

Dear Mr. Leibman,

  Thank you for your letter dated April 10, 2017 concerning Credit Suisse AG account records and enclosing a notarized copy of your client ███████'s passport. As explained in my February 28, 2017 letter, in order to disclose account records for any individual accounts held in ███████'s name or active accounts over which ███████ has a current power of attorney, ███████ must execute and notarize the revised directive enclosed with my February 28 letter. That revised directive does not refer to an order from a U.S. court.

  Article 271 of the Swiss Criminal Code criminalizes the simple act of complying with another nation's compulsory process absent Swiss government approval through a treaty-based process. I am advised by Swiss counsel that Credit Suisse cannot comply with a directive stating that it has been provided under the compulsion of a U.S. court order. Credit Suisse is ready and willing to produce account records, should any such accounts exist at Credit Suisse, upon execution of the revised directive that excludes the reference to a U.S. court order.

  Please note that, by virtue of this letter, Credit Suisse does not purport to make any statement concerning the existence of any accounts at Credit Suisse.

Alain Leibman, Esq.
April 12. 2017
Page 2


If you have any questions regarding this matter, please call me at 212.556.2278.


Very truly yours.


Andrew C. Hruska

# EXHIBIT BB

# ACCOUNT RECORDS INSTRUCTION

From:    GESTINO STIFTUNG
            Punta Pacifica, Calle Punta Colon
            Trump Ocean Club, 9th Floor, Office 905
            Panama

To:       Credit Suisse AG
            8050 Zürich
            Switzerland

Dear Sir or Madam:

My full name is Erwin Matthias Schulthess and my date of birth is December 11, 1963. I am President of GESTINO STIFTUNG and hereby instruct and authorize CREDIT SUISSE AG to disclose copies of any and all account records in CREDIT SUISSE AG's possession relating to the account(s) held in GESTINO STIFTUNG's name, from the time of the account opening through the present as follows (the "Account Records"):

a)      documents identifying the account holder, the beneficial owner and/or authorized persons;

b)      account opening documents and further formalities, if any;

c)      any bank-internal documents pertaining to the Accounts that GESTINO STIFTUNG is legally entitled to receive; and

d)      correspondence between the bank and the account holder;

e)      annual account statements and statements of assets.

You have my direct authorization to provide all documents to Kyle Sheahen, Esq. by mail, email or facsimile. He can be reached at:

      Kyle Sheahen, Esq.
      King & Spalding LLP
      1185 Avenue of the Americas
      New York, NY 10036
      Tel. no: (212) 556-2234
      Email: KSheahen@KSLAW.com

Based on the approval of the beneficiary of GESTINO STIFTUNG, all protections provided under the terms of all contractual arrangements with CREDIT SUISSE AG relating to the Acccount(s) and under the data protection, financial privacy, and/or bank secrecy laws of Switzerland are hereby waived.

I instruct CREDIT SUISSE AG to follow these instructions until revoked by myself expressly and in writing.

If you have any questions concerning this matter, please contact Mr. Kyle Sheahen, Esq. in writing at the address and/or email provided.

Thank you for your assistance.


Sincerely,


Erwin Schulthess



Enclosures:    - Excerpt from the Public Registry of Panama
               - Copy of Passport
               - Letter by Fox Rothschild dd. February 17, 2017

# EXHIBIT CC



Fox Rothschild LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Alain Leibman
Direct Dial:  (609) 895-6743
Email Address:  aleibman@foxrothschild.com

February 17, 2017

***VIA FEDERAL EXPRESS***
Gestino Stiftung
c/o Sinco Treuhand AG
Idastrasse 15
CH-8003 Zurich
Switzerland

<u>Attn</u>: Beda Singenberger or Any Responsible Officer/Director

   Re:   ▮▮▮▮▮▮ **– directive concerning Gestino Stiftung records**

Dear Sir or Madam:

    As I advised by letter to you dated February 2, 2017, I am the attorney for ▮▮▮▮▮▮ ▮▮▮▮.  With that letter I provided a Directive from ▮▮▮▮▮▮ to the Gestino Stiftung, or Gestino Foundation in English, regarding the disclosure of certain bank records which it was thought may have been in the possession, custody, or control of that entity.  Shortly thereafter, you provided a body of responsive records, which is appreciated.  A copy of those records have been provided by me to U.S. prosecutors.

    ▮▮▮▮▮▮ has also, through me, tendered similar Directives to various banks which may have possession of qualifying records, which records ▮▮▮▮▮▮ has asked be disclosed.  One such bank, Credit Suisse, has through its U.S. counsel provided a "Template Account Records Instruction" with a letter to me dated February 16, 2017 (both of which are enclosed herewith), requesting that Gestino Stiftung or an authorized signatory for Gestino Stiftung execute the same.  You will find, I believe, that the third paragraph of the letter from counsel for Credit Suisse pertains.

    ▮▮▮▮▮▮ wishes Gestino Stiftung c/o Sinco Treuhand AG to cooperate with, and provide any necessary authority to, Credit Suisse in order for the latter to fully comply with ▮▮

A Pennsylvania Limited Liability Partnership

California        Colorado        Connecticut        Delaware        District of Columbia        Florida
        Illinois        Nevada        New Jersey        New York        Pennsylvania        Texas



Fox Rothschild LLP
ATTORNEYS AT LAW

Sinco Truehand AG
February 17, 2017
Page 2

█████'s Directive to the bank, so would ask that the Template document be completed and executed by you.  You may direct the executed Template document to counsel for Credit Suisse, as follows:

> Kyle Sheahen, Esq.
> King & Spalding LLP
> 1185 Avenue of the Americas
> New York, NY 10036
> Tel. no.: (212) 556-2234
> Email: KSheahen@KSLAW.com

I would appreciate it if you would also provide me with a courtesy copy of your correspondence (with any attachments), for my file.  Thank you.

Very truly yours,

Alain Leibman

AL/bc
Enclosure (Letter of Kyle Sheahen, Esq., 2/16/17, encl.)

# EXHIBIT DD

MAY 1 9 2014

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA     )
                               )
        v.                   )    CRIMINAL NO. 1:14-CR-188
                               )
CREDIT SUISSE AG,            )
                               )
      Defendant.           )

## PLEA AGREEMENT

Dana J. Boente, United States Attorney for the Eastern District of Virginia; Mark D. Lytle, Assistant United States Attorney; Kathryn Keneally, Assistant Attorney General, Tax Division, U.S. Department of Justice; Mark F. Daly and Nanette L. Davis, Trial Attorneys, Tax Division, U.S. Department of Justice; the defendant, Credit Suisse AG; and the defendant's counsel have entered into an agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The terms of the agreement are as follows:

1.     **Offense and Maximum Penalties**

The defendant agrees to plead guilty to a one count information charging the defendant with conspiracy to commit offenses against the United States, to wit, violations of Title 26, United States Code, Section 7206(2), the aiding, assisting, procuring, counseling, and advising of the preparation and presentation of false income tax returns to the Internal Revenue Service of the Treasury Department, in violation of Title 18, United States Code, Section 371. The maximum penalties for the offense are: a maximum possible fine of $500,000, twice the gross gain derived from the offense, or twice the gross loss, whichever is greatest; full restitution; a term of probation of no more than five (5) years; and a special assessment.

2.     Factual Basis for the Plea

The defendant will plead guilty because the defendant is in fact guilty of the charged

offense. The defendant admits the facts set forth in the Statement of Facts filed with this plea

agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable

doubt. The Statement of Facts, which is hereby incorporated into this plea agreement,

constitutes a stipulation of facts for purposes of Section 1B1.2(a) of the Sentencing Guidelines.

3.     Assistance and Advice of Counsel

The defendant is satisfied that the defendant's attorney has rendered effective assistance.

The defendant understands that by entering into this agreement, defendant surrenders certain

rights as provided in this agreement. The defendant understands that the rights of criminal

defendants include the following:

A.     the right to plead not guilty and to persist in that plea;

B.     the right to a jury trial;

C.     the right to be represented by counsel – and if necessary have the court appoint

counsel - at trial and at every other stage of the proceedings; and

D.     the right at trial to confront and cross-examine adverse witnesses, to be protected

from compelled self-incrimination, to testify and present evidence, and to compel the attendance

of witnesses.

4.     Sentencing Guidelines

The parties agree to take the following positions at sentencing under the United States

Sentencing Guidelines:

A.     The parties agree that the Guideline Manual in effect as of the date of sentencing should be used in determining Credit Suisse AG's sentence. *See* U.S.S.G. § 1B1.11(a);

B.     The parties agree that the base fine is $666,500,000, which is the estimated pecuniary loss from the offense. *See* U.S.S.G. §§ 8C2.3 and 8C2.4(a);

C.     Pursuant to U.S.S.G. § 8C2.5, the culpability score is ten (10) determined as follows:

(1) Base culpability score is five (5) pursuant to U.S.S.G. § 8C2.5(a); and

(2) Add five (5) points pursuant to U.S.S.G. § 8C2.5(b)(1)(A), in that the organization had 5,000 or more employees, and an individual within the high-level personnel of the unit participated in or condoned the offense and/or tolerance of the offense by substantial authority personnel was pervasive throughout the organization;

D.     Pursuant to U.S.S.G. § 8C2.6, the appropriate multiplier range associated with a culpability score of ten (10) is 2.0 to 4.0; and

E.     Thus, the Guideline Fine Range is $1,333,000,000 to $2,666,000,000. *See* U.S.S.G. §§ 8C2.7(a), (b); 18 U.S.C. §§ 3571(c) and (d).

5.     **Restitution**

Defendant agrees that restitution is mandatory pursuant to 18 U.S.C. §3663A.  Defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses.  Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant agrees that an offense listed in § 3663A(c)(1) gave rise to this plea agreement and as such, victims of the conduct described in the charging instrument, statement of facts or any related or similar conduct shall be entitled to restitution.  The Government is currently aware that the following victim has suffered the following losses:

| Victim Name/Address | Amount of Restitution |
| --- | --- |
| IRS – RACS<br>Attn.: Mail Stop 6261, Restitution<br>333 West Pershing Avenue<br>Kansas City, MO  64108 | $666,500,000 |

The parties agree that restitution shall be paid directly to the Internal Revenue Service, pursuant

to payment instructions provided to Credit Suisse AG.  If the Court orders the defendant to pay

restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a

condition of supervised release, the IRS will use the restitution order as the basis for a civil

assessment.  *See* 26 U.S.C. § 6201(a)(4).  The defendant does not have the right to challenge the

amount of this assessment.  *See* 26 U.S.C. § 6201(a)(4)(C).  Neither the existence of a restitution

payment schedule nor the defendant's timely payment of restitution according to that schedule

will preclude the IRS from administrative collection of the restitution-based assessment,

including levy and distraint under 26 U.S.C. § 6331.

     6.     **Special Assessment**

Before sentencing in this case, the defendant agrees to pay a mandatory special

assessment of Four Hundred dollars ($400.00) per count of conviction, pursuant to 18 U.S.C.

§ 3013.

     7.     **Agreed Disposition**

     A.     The Office of the U.S. Attorney for the Eastern District of Virginia and the Tax

Division, Department of Justice (collectively, "the United States") and Credit Suisse AG agree

pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence, which comprises a Two

Billion dollar ($2,000,000,000) resolution with the Department of Justice as detailed below, is

the appropriate disposition of the Information:

4

1.      a criminal fine in the amount of One Billion, Three Hundred Thirty-Three Million, Five Hundred Thousand dollars ($1,333,500,000), less a credit of One Hundred Ninety-Six Million, Five Hundred Eleven Thousand, Fourteen Dollars ($196,511,014) for Credit Suisse Group AG's payment to the U.S. Securities and Exchange Commission pursuant to its order of February 21, 2014 in Administrative Proceeding File No. 3-15763, for a final payment of One Billion, One Hundred Thirty-Six Million, Nine Hundred Eighty-Eight Thousand, Nine Hundred Eighty-Six Dollars ($1,136,988,986), to be paid within one week of the date of sentencing;

2.      a mandatory special assessment of $400, which shall be paid to the Clerk of Court on or before the date of sentencing; and

3.      restitution to the U.S. Internal Revenue Service in the amount of Six Hundred Sixty-Six Million, Five Hundred Thousand dollars ($666,500,000), to be paid within one week of sentencing.

In light of the fine, restitution, and other payments to be paid by Credit Suisse AG to the United States and federal and state regulatory authorities, the United States will forgo the payment of additional penalties available under the relevant statutes, rules, and regulations.

B.      Credit Suisse AG further agrees to lawfully undertake the following:

1.      Credit Suisse AG must promptly disclose all evidence and information described in Sections II.D.1. and II.D.2 of the Program for Non-Prosecution Agreements or Non-Target Letters for Swiss Banks and in the format requested by the United States;

2.      Credit Suisse AG will provide, at its own expense, fair and accurate translations of any foreign language documents produced by Credit Suisse AG to the Government either directly or through the Swiss Federal Tax Administration;

3.      Credit Suisse AG will provide testimony or information, including testimony and information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the Government, including but not limited to the conduct set forth in the Statement of Facts;

4.      Credit Suisse AG will provide all necessary information for the United States to draft treaty requests to seek account records and other information, and will collect and maintain all records that are potentially responsive to such treaty requests to facilitate prompt responses;

5.      Credit Suisse AG will close any and all accounts of recalcitrant account holders, as defined in Section 1471(d)(6) of the Internal Revenue Code; will implement procedures to prevent its employees from assisting recalcitrant account holders to engage in acts of further concealment in connection with closing any account or transferring any funds; and will not open any U.S. Related Accounts (as defined in paragraph I.B.9 of the Program for Non-Prosecution Agreements or Non-Target Letters for Swiss Banks, without regard to the dollar limit or the applicable time period) except on conditions that ensure that the account will be declared to the United States and will be subject to disclosure by Credit Suisse AG; and

6.      Credit Suisse AG agrees that no portion of the fine or other payments made pursuant to this plea agreement will serve as a basis for Credit Suisse AG to claim, assert, or apply for, either directly or indirectly, any tax deduction, any tax credit, or any other offset against any U.S. federal, state, or local tax or taxable income.

C.      The United States specifically may, at its sole option, be released from its commitments under this plea agreement, including, but not limited to, its agreement that this

paragraph constitutes the appropriate disposition of this case, if at any time between its execution of this plea agreement and sentencing, Credit Suisse AG:

      1.    Fails to truthfully admit its conduct in the offense of conviction;

      2.    Falsely denies, or frivolously contests, relevant conduct for which Credit Suisse AG is accountable under U.S.S.G. § 1B1.3;

      3.    Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for which Credit Suisse AG is accountable under U.S.S.G. § 1B1.3;

      4.    Engages in acts which form a basis for finding that Credit Suisse AG has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1; or

      5.    Attempts to withdraw its plea.

    D.    Credit Suisse AG expressly understands and acknowledges that it may not withdraw its plea of guilty, unless the Court rejects this plea agreement under Fed. R. Crim. P. 11(c)(5).

    E.    Credit Suisse AG agrees that it shall not, through its attorneys, agents, officers, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or Credit Suisse AG's representations set forth in this plea agreement; provided, however, that the restrictions set forth in this paragraph are not intended to and shall not apply to any current or former Credit Suisse AG employee, or any other individual or entity, in the course of any criminal, regulatory, or civil case, investigation, or other proceeding initiated by the Government or any other governmental agency or authority against an individual or entity, whether in the United States or any other jurisdiction, provided that the individual or entity is not authorized to speak on behalf of Credit Suisse AG. Any contradictory statement by Credit Suisse AG shall

constitute a breach of this plea agreement, and trigger the provisions of sub-paragraphs 12a-12c. The decision as to whether any contradictory statement will be imputed to Credit Suisse AG for the purpose of determining whether Credit Suisse AG has breached this plea agreement shall be at the sole discretion of the United States. Upon a determination by the United States that a contradictory statement has been made by Credit Suisse AG, the United States shall promptly notify Credit Suisse AG in writing of the contradictory statement, and Credit Suisse AG may avoid a breach of this plea agreement by repudiating the statement both to the recipient of the statement and to the United States within 72 hours after receipt of notice by the United States. Credit Suisse AG consents to the public release by the United States, in its sole discretion, of any repudiation.

8.    **Waiver of Appeal, FOIA and Privacy Act Rights**

The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence agreed to by the parties, as set out in paragraph 7, even if the District Court rejects one or more positions advocated by the parties with regard to the application of the U.S. Sentencing Guidelines, on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement. The defendant reserves its right pursuant to Title 18, United States Code, Section 3742(c)(1) to appeal any sentence imposed that is greater than the sentence set forth in this agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b) and (c). The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

9.    Scope of the Agreement

The United States will not further criminally prosecute the defendant for the specific conduct described in the Information or Statement of Facts. This agreement not to further prosecute Credit Suisse AG is expressly contingent on:

A.    The guilty plea of Credit Suisse AG being accepted by the Court and not withdrawn; and

B.    Credit Suisse AG's performance of all of its material obligations as set forth in this plea agreement. If Credit Suisse AG's guilty plea is not accepted by the Court or is withdrawn for any reason, or if Credit Suisse AG should fail to perform a material obligation under this plea agreement, this agreement not to further prosecute shall be null and void.

This plea agreement shall bind defendant, subsidiaries, affiliated entities, assignees, and its successor corporation if any, and any other person or entity that assumes the obligations contained herein. No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, divestiture of assets, or similar action shall alter defendant's obligations under this Agreement. Defendant shall not engage in any action to seek to avoid the obligations set forth in this Agreement.

This plea agreement does not affect the right of the United States to prosecute any individual, including but not limited to present and former officers, directors, employees, and

agents of Credit Suisse AG and any related entity, in connection with the conduct encompassed by this plea agreement and accompanying Information and/or Statement of Facts.

10.    **Fed. R. Crim. P. 11(c)(l)(C) Agreement**

Credit Suisse AG's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(l)(C).  Credit Suisse AG cannot withdraw its plea of guilty unless the sentencing judge rejects this plea agreement or fails to impose a sentence consistent herewith.  If the sentencing judge rejects this plea agreement or fails to impose a sentence consistent herewith, this plea agreement shall be null and void at the option of either the United States or Credit Suisse AG.

11.    **Civil and Administrative Liability**

By entering into this plea agreement, the United States does not compromise any civil liability, including but not limited to any tax liability, which Credit Suisse AG may have incurred or may incur as a result of its conduct and its plea of guilty to the attached Information.

12.    **Breach of Plea Agreement**

This plea agreement is effective when signed by the defendant, the defendant's attorney, an attorney for the Office of the U.S. Attorney for the Eastern District of Virginia, and an attorney for the Tax Division, Department of Justice.  The defendant agrees to entry of this plea agreement at the date and time scheduled with the Court by the United States (in consultation with the defendant's attorney).  If the defendant fails to comply with any provision of this plea agreement, or commits or attempts to commit any additional federal, state or local crimes, then:

A.    The United States will be released from its obligations under this plea agreement by notifying Credit Suisse AG, through counsel or otherwise, in writing.  The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;

B.    The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the

applicable statute of limitations on the date this agreement is signed. Notwithstanding the

subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees

to waive any statute-of-limitations defense as provided for in the tolling agreement executed by

the parties on May 19, 2014; and

      C.      Any prosecution, including the prosecution that is the subject of this agreement,

may be premised upon any information provided, or statements made, by the defendant, and all

such information, statements, and leads derived therefrom may be used against the defendant.

The defendant waives any right to claim that statements made before or after the date of this

agreement, including the Statement of Facts accompanying this agreement or adopted by the

defendant and any other statements made pursuant to this or any other agreement with the United

States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the

Sentencing Guidelines, or any other provision of the Constitution or federal law.

      Any alleged breach of this agreement by either party shall be determined by the Court in

an appropriate proceeding at which the defendant's disclosures and documentary evidence shall

be admissible and at which the moving party shall be required to establish a breach of the plea

agreement by a preponderance of the evidence.

      13.      Who Is Bound By Agreement

      With respect to matters set forth in Paragraph 9, this plea agreement is binding on Credit

Suisse AG and the Office of the United States Attorney for the Eastern District of Virginia and

the Tax Division of the Department of Justice. Credit Suisse AG understands that this plea

agreement does not bind any state or local prosecutorial authorities.

14.     **Corporate Authorization**

Credit Suisse AG shall provide to the U.S. Attorney and the Court a certified copy of a resolution of the Board of Directors of Credit Suisse AG, affirming that the Board of Directors has authority to enter into the plea agreement and has (1) reviewed the Information in this case and the proposed plea agreement or has been advised of the contents thereof; (2) consulted with legal counsel in connection with the matter; (3) voted to enter into the proposed plea agreement; (4) voted to authorize Credit Suisse AG to plead guilty to the charge specified in the Information; and (5) voted to authorize the corporate officer identified below to execute the plea agreement and all other documents necessary to carry out the provisions of the plea agreement. A copy of the resolution is attached as Exhibit A. Credit Suisse AG agrees that a duly authorized corporate officer for Credit Suisse AG shall appear on behalf of Credit Suisse AG and enter the guilty plea and will also appear for the imposition of sentence.

15.     **Nature of the Agreement and Modifications**

This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to

plead guilty.  Any modification of this plea agreement shall be valid only as set forth in writing

in a supplemental or revised plea agreement signed by all parties.


DANA J. BOENTE                                    KATHRYN KENEALLY
United States Attorney                            Assistant Attorney General
                                                  Tax Division


_____ 5-19-2014                _____
Mark D. Lytle                                     Mark F. Daly
Assistant U.S. Attorney                           Senior Litigation Counsel
                                                  Nanette L. Davis
                                                  Assistant Chief


13

Defendant's Signature:  The Board of Directors has authorized me to execute this plea

agreement on behalf of Credit Suisse AG.  The Board has read this plea agreement, the attached

criminal Information and Statement of Facts in their entirety, or has been advised of the contents

thereof, and has discussed them fully in consultation with Credit Suisse AG's attorneys.  I am

further authorized to acknowledge on behalf of Credit Suisse AG that these documents fully set

forth Credit Suisse AG's agreement with the United States, and that no additional promises or

representations have been made to Credit Suisse AG by any officials of the United States in

connection with the disposition of this matter, other than those set forth in these documents.

Date: _____   _____

                           Credit Suisse AG

Defense Counsel Signature:  We are counsel for Credit Suisse AG in this case.  We have

fully explained to the defendant the defendant's rights with respect to the pending Information.

Further, we have reviewed Title 18, United States Code, Section 3553 and the Sentencing

Guidelines Manual, and we have fully explained to the defendant the provisions that may apply

in this case.  We have carefully reviewed every part of this plea agreement with the defendant.

To our knowledge, the defendant's decision to enter into this agreement is an informed and

voluntary one.

Date: 5|19|14   _____

                Christopher A. Wray
                Andrew C. Hruska
                Michael R. Pauzé
                William F. Johnson
                Counsel for the Defendant

14

# EXHIBIT EE

Joint Statement

between the U.S.  Department of Justice

and

the Swiss Federal Department of Finance

1. The United States Department of Justice has been and continues to be engaged in law enforcement action against individuals and entities that use foreign bank accounts to evade U.S. taxes and reporting requirements, and individuals and entities that facilitate the evasion of U.S. taxes and reporting requirements.  In announcing today the Program for Swiss banks the Department of Justice intends to provide a path for Swiss Banks that are not currently the target of a criminal investigation authorized by the U.S. Department of Justice, Tax Division, to obtain resolution concerning their status in connection with the Department's overall investigations, and to assist the Department of Justice in its law enforcement efforts.  The Program does not apply to individuals and is not available to any Swiss bank as to which the Tax Division has authorized a formal criminal investigation concerning its operations.

2. Switzerland welcomes the efforts of the Department of Justice to provide the Program and intends to draw the attention of the Swiss Banks to the terms of the Program and encourages them to consider participating therein.  Switzerland notes that the Swiss Parliament by Declaration of 19 June 2013 stated its expectation that the Swiss Federal Council will take all measures within existing legal framework to put Swiss banks in a position to cooperate with the Department of Justice.  Switzerland represents that applicable Swiss law will permit effective participation by the Swiss Banks on the terms set out in the Program.

3. The signatories take note that the Swiss Financial Market Supervisory Authority intends to encourage, within its supervisory powers, all Swiss Banks to send a letter to U.S. Persons or Entities with U.S. Related Accounts at those Swiss Banks informing them of the Program and drawing their attention to the Internal Revenue Service Offshore Voluntary Disclosure Initiative.

4. Switzerland intends to process treaty requests according to the Convention between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, signed at Washington on October 2, 1996, and the Protocol Amending the Convention, signed at Washington on September 23, 2009, if and when it is in force and applicable, as may be amended, and intends to do so on an expedited basis, including by providing additional personnel and the other necessary resources to process the requests.

5. Noting the importance attached by both sides to providing a high level of personal data and privacy protection for all individuals as provided in their laws, the signatories understand that, if personal data are provided, they should only be used for purposes of law enforcement (which may include regulatory action) in the United States or as otherwise permitted by U.S. law. Personal data should only be retained for so long as necessary for these purposes.

6. The signatories intend to resolve any difficulties or doubts arising from this Joint Statement by way of consultations.


Signed at Washington, D.C., this 29th day of August, 2013, in duplicate in English.


JAMES M. COLE
Deputy Attorney General
United States Department of Justice

MANUEL SAGER
Ambassador Extraordinary
and Plenipotentiary of
Switzerland to the United States

# PROGRAM FOR NON-PROSECUTION
## AGREEMENTS OR NON-TARGET LETTERS FOR SWISS BANKS

### I. Scope and Definitions

#### A. Scope of the Program

This Program is available to any Swiss Bank

1. requesting a Non-Prosecution Agreement on the terms set out in Paragraph II, below (Category 2 Bank);

2. requesting a Non-Target Letter on the terms set out in Paragraph III, below (Category 3 Bank); or

3. requesting a Non-Target Letter on the terms set out in Paragraph IV, below (Category 4 Bank).

This Program does not apply to individuals and shall not be available to any Swiss Bank as to which the Tax Division has authorized a formal criminal investigation concerning its operations (Category 1 Bank) as of the date of the announcement of this Program. All Category 1 Banks either have already been notified that the Tax Division has authorized a formal criminal investigation concerning its operations, or will be so notified through its counsel by certified mail issued in conjunction with the announcement of this Program.

#### B. Definitions

1. "Department" means the United States Department of Justice.

2. "Tax Division" means the Tax Division of the United States Department of Justice.

3. "FATCA Agreement" means the Agreement between the United States of America and Switzerland for Cooperation to Facilitate the Implementation of FATCA signed on February 14, 2013.[1]

4. "Swiss Bank" has the same meaning as the term "Swiss Financial Institution" in the FATCA Agreement, except that it shall exclude any "Investment Entity" or "Specified Insurance Company" that does not independently meet the definition of "Custodial Institution" or "Depository Institution."

5. "FFI Agreement" has the same meaning as in the FATCA Agreement.

---

[1] References to the FATCA Agreement are for definitional purposes only and apply for the purpose of this Program without regard to any subsequent amendments to the FATCA Agreement and regardless of whether or when the FATCA Agreement is ratified or becomes effective.

6. "Applicable Period" shall mean the period between August 1, 2008, and either (a) the later of December 31, 2014, or the effective date of an FFI Agreement, or (b) the date of the Non-Prosecution Agreement or Non-Target Letter, if that date is earlier than December 31, 2014, inclusive.

7. "U.S. person" has the same meaning as in the FATCA Agreement.

8. "Entity" has the same meaning as in the FATCA Agreement.

9. "U.S. Related Accounts" means accounts which exceeded $50,000 in value at any time during the Applicable Period, as measured by the account balance on the last day of each month during the Applicable Period, and as to which indicia exist that a U.S. Person or Entity has or had a financial or beneficial interest in, ownership of, or signature authority (whether direct or indirect) or other authority (including authority to withdraw funds; to make investment decisions; to receive account statements, trade confirmations, or other account information; or to receive advice or solicitations) over the account, as determined by applying the due diligence procedures applicable to "Lower Value Accounts" in the FATCA Agreement, Annex I, Part II, for accounts with $250,000 or less in value at all times during the Applicable Period, and by applying the due diligence procedures applicable to "High-Value Accounts" in the FATCA Agreement, Annex I, Part II, for accounts with more than $250,000 in value at any time during the Applicable Period, notwithstanding the amounts and dates set out in the FATCA Agreement, Annex I, Part II.

10. "Independent Examiner" means a qualified independent attorney or accountant; the Tax Division reserves the right to object to a particular attorney or accountant, but will not unreasonably withhold approval.

11. "Non-Target Letter" means a letter from the Tax Division stating that, as of the date of the letter and based upon information then known to the Tax Division, the Swiss Bank to which the letter is addressed is not the target of a criminal investigation authorized by the Tax Division for violations of any tax-related offenses under Titles 18 or 26, United States Code, or for any unreported monetary transactions under §§ 5314 or 5322, Title 31, United States Code, in connection with undeclared U.S. Related Accounts held by the Swiss Bank during the Applicable Period.

II. **Swiss Banks Requesting A Non-Prosecution Agreement (Category 2 Banks)**

A. Any Swiss Bank

1. as to which the Tax Division has not authorized a formal criminal investigation concerning its operations as of August 29, 2013 (i.e., that is not a Category 1 Bank);

2. that is not a Category 4 Bank; and

2

3. that has reason to believe it may have committed tax-related offenses under Titles 18 or 26, United States Code, or monetary transactions offenses under §§ 5314 or 5322, Title 31, United States Code, in connection with undeclared U.S. Related Accounts held by the Swiss Bank during the Applicable Period,

may request a Non-Prosecution Agreement ("NPA") on the terms set out in Paragraphs II.B through K, below.

B. Each Swiss Bank requesting an NPA must provide a letter to the Tax Division, expressing its intent, no later than December 31, 2013. The letter must:

   1. include a plan for complying with the requirements set out herein, within a reasonable time, but not to exceed 120 days from the date of the letter of intent;

   2. provide the identity and qualifications of the Independent Examiner;

   3. state that the Swiss Bank will maintain all records required for compliance with the terms of an NPA as set out in this Program, including all records that may be sought by treaty requests; and

   4. state that the Swiss Bank agrees that with respect to any applicable statute of limitations that has not expired as of the date of the announcement of this Program, the Bank waives any potential defense based on the statute of limitations for the period from the date of the announcement of this Program to the issuance of an NPA or a DPA.

   If such Bank is not able to comply with the requirements set out in this Program within 120 days from the date of the letter of intent, the Tax Division will grant a one-time extension of 60 days upon a showing of good cause.

C. If the Tax Division concludes that a Swiss Bank has met all obligations set forth in the NPA, the Department will not prosecute the Swiss Bank for any tax-related offenses under Titles 18 or 26, United States Code, or for any unreported monetary transactions under §§ 5314 or 5322, Title 31, United States Code, in connection with undeclared U.S. Related Accounts held by the Swiss Bank during the Applicable Period.

D. Each Swiss Bank requesting an NPA must fully cooperate in the disclosure of the following evidence and information.

   1. Prior to the execution of an NPA, the Swiss Bank must provide information including:

      a. how the cross-border business for U.S. Related Accounts was structured, operated, and supervised (including internal reporting and other communications with and among management);

3

    b.   the name and function of the individuals who structured, operated, or supervised the cross-border business for U.S. Related Accounts during the Applicable Period;

    c.   how the Swiss Bank attracted and serviced account holders;

    d.   an in-person presentation and documentation, properly translated, supporting the disclosure of the above information, as well as cooperation and assistance with further explanation of information and materials so presented, upon request, or production of additional explanatory materials as needed; and

    e.   the total number of U.S. Related Accounts and the maximum dollar value, in the aggregate, of the U.S. Related Accounts that:

        i.   existed on August 1, 2008;

        ii.  were opened between August 1, 2008, and February 28, 2009; and

        iii. were opened after February 28, 2009.

2.   Upon execution of an NPA, for all U.S. Related Accounts that were closed during the Applicable Period, the Swiss Bank must provide information including:

    a.   the total number of accounts; and

    b.   as to each account:

        i.   the maximum value, in dollars, of each account, during the Applicable Period;

        ii.  the number of U.S. persons or entities affiliated or potentially affiliated with each account, and further noting the nature of the relationship to the account of each such U.S. person or entity or potential U.S. person or entity (e.g., a financial interest, beneficial interest, ownership, or signature authority, whether directly or indirectly, or other authority);

        iii. whether it was held in the name of an individual or an entity;

        iv. whether it held U.S. securities at any time during the Applicable Period;

        v.  the name and function of any relationship manager, client advisor, asset manager, financial advisor, trustee, fiduciary, nominee, attorney, accountant, or other individual or entity functioning in a similar capacity known by the Bank to be affiliated with said account at any time during the Applicable Period; and

        vi. information concerning the transfer of funds into and out of the account during the Applicable Period on a monthly basis, including (a) whether

funds were deposited or withdrawn in cash; (b) whether funds were transferred through an intermediary (including but not limited to an asset manager, financial advisor, trustee, fiduciary, nominee, attorney, accountant, or other third party functioning in a similar capacity) and the name and function of any such intermediary; (c) identification of any financial institution and domicile of any financial institution that transferred funds into or received funds from the account; and (d) any country to or from which funds were transferred.

3.    Prior to the execution of an NPA, the Swiss Bank will, at its expense, have the information described in Paragraph II.D.2, above, verified by an Independent Examiner.  The verification will include a statement that the Independent Examiner has confirmed that the due diligence standards set out in Paragraph I.B.9, above, were applied in collecting the information described in Paragraph II.D.2, above.

4.    As a condition of any NPA, the Swiss Bank will provide all necessary information for the United States to draft treaty requests to seek account information; such cooperation will include but not be limited to the development of appropriate search criteria.

5.    As a condition of any NPA, the Swiss Bank will collect and maintain all records that are potentially responsive to such treaty requests to facilitate prompt responses.

E.    Retention of records

The terms of an NPA will include that the Swiss Bank agrees to retain all records relating to its U.S. cross-border business, including records relating to all U.S. Related Accounts closed during the Applicable Period, for a period of 10 years from the termination date of the NPA.

F.    Assistance in Related Matters

The terms of an NPA will include that the Swiss Bank, upon request, will provide:

1.    testimony of a competent witness or information as needed to enable the United States to use the information and evidence obtained pursuant to a provision of this Program or separate treaty request in any criminal or other proceeding; and

2.    assistance in identification and translation of significant documents at the expense of the Swiss Bank.

G.    Closure of Accounts of Recalcitrant Account Holders

The terms of an NPA will provide that the Swiss Bank agrees to close any and all accounts of recalcitrant account holders, as defined in Section 1471(d)(6) of the U.S. Internal Revenue Code.  The terms of the NPA will require that the Swiss Bank

implement procedures to prevent its employees from assisting recalcitrant account holders to engage in acts of further concealment in connection with closing any account or transferring any funds. The terms of the NPA will also provide that the Swiss Bank agrees not to open any U.S. Related Accounts (as defined in Paragraph I.B.9, above, but without regard to the dollar limit or the reference to the Applicable Period) except on conditions that ensure that the account will be declared to the United States and will be subject to disclosure by the Swiss Bank.

H.  Payment

Upon execution of an NPA, the Swiss Bank will agree to pay as a penalty:

1.  for U.S. Related Accounts that existed on August 1, 2008, an amount equal to 20% of the maximum aggregate dollar value of all such accounts during the Applicable Period;

2.  for U.S. Related Accounts that were opened between August 1, 2008, and February 28, 2009, an amount equal to 30% of the maximum aggregate dollar value of all such accounts; and

3.  for U.S. Related Accounts that were opened after February 28, 2009, an amount equal to 50% of the maximum aggregate value of all such accounts.

The determination of the maximum dollar value of the aggregated U.S. Related Accounts may be reduced by the dollar value of each account as to which the Swiss Bank demonstrates, to the satisfaction of the Tax Division, was not an undeclared account, was disclosed by the Swiss Bank to the U.S. Internal Revenue Service, or was disclosed to the U.S. Internal Revenue Service through an announced Offshore Voluntary Disclosure Program or Initiative following notification by the Swiss Bank of such a program or initiative and prior to the execution of the NPA.

I.  This Program sets out the framework for the proposed NPAs. Each NPA may take into account factors specific to the particular Swiss Bank.

J.  If the Department determines, in its sole discretion, that any information or evidence provided by the Swiss Bank is materially false, incomplete, or misleading, it may decline to enter into an NPA; or if after entering into an NPA, the Department, in its sole discretion, determines that the Swiss Bank has provided materially false, incomplete, or misleading information or evidence, or has otherwise materially violated the terms of the NPA, the United States may pursue any and all legal remedies available to it, including investigating and instituting criminal charges against the Swiss Bank, without regard to any other provision of the NPA or this Program. For purposes of this provision, by executing the NPA, the Swiss Bank will agree that any prosecutions under statutes included in Paragraph II.C, above, that are not time-barred by the applicable statute of limitations on the date of the announcement of the Program may be commenced against the Swiss Bank, and the Swiss Bank will agree to waive any defenses premised upon the expiration of the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay, and will agree

that such waiver is knowing, voluntary, and in express reliance upon the advice of the Swiss Bank's counsel.

K. If the Tax Division determines, upon review of the information provided by a Swiss Bank under Paragraph II.D, above, or other information available to the Tax Division, that the Swiss Bank's conduct demonstrates extraordinary culpability, the Tax Division reserves the right to require that the Swiss Bank enter a Deferred Prosecution Agreement ("DPA") instead of an NPA.

### III. Swiss Banks Requesting A Non-Target Letter As A Category 3 Bank

A. Any Swiss Bank

1. as to which the Tax Division has not authorized a formal criminal investigation concerning its operations as of the date of this Program (i.e., that is not a Category 1 Bank);

2. that is not a Category 4 Bank; and

3. that has not committed any tax-related offenses under Titles 18 or 26, United States Code, or monetary transactions offenses under §§ 5314 or 5322, Title 31, United States Code, in connection with undeclared U.S. Related Accounts held by the Swiss Bank during the Applicable Period (i.e., that is not a Category 2 Bank),

may request a Non-Target Letter on the terms set out in Paragraphs III.B through H, below.

B. Each Swiss Bank requesting a Non-Target Letter as a Category 3 Bank must provide a letter to the Tax Division, expressing its intent no earlier than July 1, 2014 and no later than October 31, 2014. The letter must:

1. include a plan for complying with the requirements set out herein, within a reasonable time, but not to exceed 120 days from the date of the letter of intent;

2. provide the identity and qualifications of the Independent Examiner;

3. state that the Swiss Bank will maintain all records required for compliance with the terms set out below; and

4. state that the Swiss Bank agrees that with respect to any applicable statute of limitations that has not expired as of the date of the announcement of this Program, the Bank waives any potential defense based on the statute of limitations for the period from the date of the announcement of this Program to the issuance of a Non-Target Letter.

C. If a Swiss Bank, after having undertaken an investigation in a timely and good faith manner, belatedly determines, based on the discovery of information that in good faith could not have been discovered previously, that it should instead have requested an

NPA as a Category 2 Bank, the Tax Division may consider whether to enter into discussions with the Swiss Bank as if the Swiss Bank had timely requested an NPA under the terms of Paragraph II, above. A request for relief under this provision must be made before October 31, 2014. Relief will be granted at the sole discretion of the Tax Division, and only under extraordinary circumstances. Under no circumstances will such relief be considered if the Tax Division has authorized a formal criminal investigation concerning the operations of the Swiss Bank, or has received information concerning wrongful conduct by the Swiss Bank.

D.   A Swiss Bank requesting a Non-Target Letter under Paragraph III.B, above, must, at its expense, engage an Independent Examiner to conduct an independent internal investigation.

E.   At the conclusion of the independent internal investigation, the Swiss Bank and the Independent Examiner must:

1.   verify the percent of the Swiss Bank's account holdings and assets under management that are U.S. Related Accounts;

2.   verify that the Swiss Bank has an effective compliance program, accompanied by a description of the compliance program; and

3.   provide the Tax Division with a report of the Independent Examiner's internal investigation, prepared in English, that includes: (i) a list of the witnesses, including titles, interviewed by the Independent Examiner and a summary of the information provided by each witness; (ii) identification of the files reviewed by the Independent Examiner; (iii) the factual findings of the Independent Examiner; and (iv) the conclusions reached by the Independent Examiner.

F.   A Swiss Bank requesting a Non-Target Letter under Paragraph III.B, above, must agree:

1.   to maintain all notes, drafts, correspondence, reports, and other documents or records created or prepared in any manner by the Independent Examiner, or reviewed by or provided to the Independent Examiner, for a period of ten years from the date of the Non-Target Letter;

2.   to close any and all accounts of recalcitrant account holders, as defined in Section 1471(d)(6) of the U.S. Internal Revenue Code, and to implement procedures to prevent its employees from assisting recalcitrant account holders to engage in acts of further concealment in connection with closing any account or transferring any funds;

3.   not to open any U.S. Related Accounts (as defined in Paragraph I.B.9, above, but without regard to the dollar limit or the reference to the Applicable Period) except on conditions that will ensure that the account will be declared to the United States and will be subject to disclosure by the Swiss Bank; and

8

4.    that, if the Department, in its sole discretion, determines that the Swiss Bank has provided materially false, incomplete, or misleading information or evidence to the United States, or has otherwise materially violated the terms of any agreement with the United States, the United States may pursue any and all legal remedies available to it, including investigating and instituting criminal charges against the Swiss Bank, without regard to any other provision of the Non-Target Letter or this Program. For purposes of this provision, the Swiss Bank will agree that any prosecutions that are not time-barred by the applicable statute of limitations on the date of the announcement of the Program may be commenced against the Swiss Bank, and the Swiss Bank will agree to waive any defenses premised upon the expiration of the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay, and will agree that such waiver is knowing, voluntary, and in express reliance upon the advice of the Swiss Bank's counsel.

G.   Following the submission of the report of an Independent Examiner's internal investigation on the terms set out in Paragraph III.E.3, above:

1.   The Tax Division may either (a) inform the Swiss Bank that the Swiss Bank is eligible for a Non-Target Letter as a Category 3 Bank or (b) seek additional information from the Swiss Bank prior to making its determination. The Tax Division may decline to provide a Non-Target Letter if the requested information is not provided.

2.   The Tax Division will endeavor to provide the determination or the request for information set out in Paragraph III.G.1, above, within a period of 270 days from receipt of the report of the Independent Examiner's internal investigation. Should the Tax Division seek additional information, the Tax Division will endeavor to provide a determination within 90 days of the receipt of all such additional information. If the Tax Division is unable to act within these time periods, the Tax Division will provide notice to the Swiss Bank of its expectation as to the additional time that will be needed to complete its review.

H.   The Tax Division may decline to provide a Non-Target Letter to any Swiss Bank if it determines that the Swiss Bank has failed to meet the standard set out in Paragraph III.A.3, above, or that any information or evidence provided by the Swiss Bank is materially false, incomplete, or misleading, or it has information that contradicts the verification or report of the Independent Examiner under Paragraph III.E, above, or that otherwise demonstrates criminal culpability by the Swiss Bank.

## IV. Swiss Banks Requesting A Non-Target Letter As A Category 4 Bank

A.   Any Swiss Bank

1.   as to which the Tax Division has not authorized a formal criminal investigation concerning its operations as of the date of this Program (i.e., that is not a Category 1 Bank); and

9

2.   that is a "Deemed Compliant Financial Institution" as a "Financial Institution with Local Client Base" under the FATCA Agreement, Annex II Paragraph II.A.1, as if the FATCA Agreement were in force during the Applicable Period (except that the Swiss Bank must meet the terms of Annex II, Paragraph II.A.1.e on December 31, 2009, and the date of the announcement of this Program),

may request a Non-Target Letter on the terms set out in Paragraphs IV.B through E, below.

B.   A Swiss Bank requesting a Non-Target Letter as a Category 4 Bank must provide a letter to the Tax Division, expressing its intent no earlier than July 1, 2014 and no later than October 31, 2014.  The letter must:

1.   include a plan for complying with the requirements set out herein, within a reasonable time, but not to exceed 120 days from the date of the letter of intent;

2.   provide the identity and qualifications of the Independent Examiner;

3.   state that the Swiss Bank will maintain all records required for compliance with the terms set out below; and

4.   state that the Swiss Bank agrees that with respect to any applicable statute of limitations that has not expired as of the date of the announcement of this Program, the Bank waives any potential defense based on the statute of limitations for the period from the date of the announcement of this Program to the issuance of a Non-Target Letter.

C.   To obtain a Non-Target Letter as a Category 4 Bank, a Swiss Bank must:

1.   provide verification executed by the Swiss Bank and an Independent Examiner that it has satisfied the requirements of Paragraph IV.A, above;

2.   agree to maintain records sufficient to establish the basis for verification of its status as a Category 4 Bank for a period of ten years from the date of the Non-Target Letter; and

3.   agree that, if the Department, in its sole discretion, determines that the Swiss Bank has provided materially false, incomplete, or misleading information or evidence to the United States, or has otherwise materially violated the terms of any agreement with the United States, the United States may pursue any and all legal remedies available to it, including investigating and instituting criminal charges against the Swiss Bank, without regard to any other provision of the Non-Target Letter or this Program.  For purposes of this provision, the Swiss Bank will agree that any prosecutions that are not time-barred by the applicable statute of limitations on the date of the announcement of the Program may be commenced against the Swiss Bank, and the Swiss Bank will agree to waive any defenses premised upon the expiration of the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay, and will

agree that such waiver is knowing, voluntary, and in express reliance upon the advice of the Swiss Bank's counsel.

D. Upon acceptance of verification of a Swiss Bank's status as a Category 4 Bank by the Tax Division, and the agreement by the Swiss Bank to the terms set out in Paragraph IV.C, above, the Tax Division will provide the Swiss Bank with a Non-Target Letter.

E. The Tax Division may decline to provide a Non-Target Letter if it determines that any information or evidence provided by the Swiss Bank is materially false, incomplete, or misleading, or if it has evidence that contradicts the verification of the Independent Examiner under Paragraph IV.C, above, or otherwise demonstrates criminal culpability by the Swiss Bank.

## V.  Other Provisions

A. The Tax Division will not authorize formal criminal investigation of any additional Swiss Banks in connection with undeclared U.S. Related Accounts held by the Swiss Bank during the Applicable Period before January 1, 2014.

B. The personal data provided by the Swiss Banks under this Program will be used and disclosed only for purposes of law enforcement (which may include regulatory action) in the United States or as otherwise permitted by U.S. law.

C. This Program is conditioned on the intention of Switzerland, as stated in the Joint Statement between the U.S. Department of Justice and the Swiss Federal Department of Finance dated August 29, 2013, to encourage Swiss Banks to consider participation in the Program.   Should Switzerland fail to provide or act to withdraw such encouragement, or should legal barriers prevent effective participation by the Swiss Banks on the terms set out in this Program, this Program may be terminated by the Department.

Announced on August 29, 2013.