

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

April 19, 2017

**BY ECF AND EMAIL**

The Hon. William H. Pauley III
United States District Judge
500 Pearl Street
New York, NY 10007

      Re:    <u>In re Various Grand Jury Subpoenas</u>, 12 Misc. 381 (WHP)

Dear Judge Pauley:

      The Government writes in opposition to Subject E's third motion to vacate the Court's January 24, 2017 order (the "Sanctions Order"), which imposed sanctions of $1,000 per day "until Subject E produces documents responsive to the 2010 Subpoena and 2016 Subpoena." Under the most recent timetable since set by the Court, sanctions will begin to accrue on April 24, 2017.

      In her third motion to vacate the Sanctions Order, Subject E argues that the contempt citation should be purged despite the fact that responsive Credit Suisse account documents have yet to be produced. In support of her argument, Subject E asserts that the only way for her to obtain the documents is for her to execute a specific written directive to Credit Suisse, but that the Second Circuit has barred district courts from compelling subpoena recipients to sign such a directive. Subject E's argument fails on several counts.

### The Documents May Be Obtained in Person in Switzerland

      Subject E is incorrect in asserting that a written directive is the only possible way to obtain the outstanding responsive documents. Credit Suisse has informed the Government that a Credit Suisse account holder may obtain their account records by physically traveling to, or designating an authorized representative to physically travel to, a Credit Suisse location in Switzerland and requesting the records, a copy of which will then be provided in person to the account holder or authorized representative for whatever purposes they deem appropriate. *See* April 19, 2017 Lenow Declaration ("Lenow Decl.") at ¶ 2(a), attached hereto. A written

directive to Credit Suisse that complies with Swiss laws is required only if an account holder or an authorized representative of an account holder requests that Credit Suisse itself transmit account documents across Swiss borders. *Id.* ¶ 2(b). The Government raised the option of a representative of Subject E obtaining account records in person in its March 17, 2017 letter to the Court, but at oral argument counsel for Subject E refused to consider pursuing that route. *See* March 31, 2017 argument tr. at 24 (making light of option raised by the Government and stating "we are free to travel to Europe and knock on doors like beggars for alms").

### The 1987 Directive Cases Are Inapposite

Even if a directive were the only option for obtaining the records, this Court would still be well within its power to impose sanctions until Subject E produces the responsive documents.

*A. The Compelled Directive Cases Do Not Apply In the Required Records Context*

Subject E cites two Second Circuit decisions addressing what language a court can compel a subpoena recipient to include or omit in a directive to a foreign financial institution. *See In re Grand Jury Subpoena*, 826 F.2d 1166, 1171 (2d Cir. 1987); *In re N.D.N.Y. Grand Jury Subpoena #86-0351-S*, 811 F.2d 114, 117 (2d Cir. 1987) (together, the "1987 Directive Cases"). As this Court noted in its prior order, the Second Circuit's concern in those cases was about district courts compelling subpoena recipients to sign written bank directives omitting that the directives were signed under compulsion, which the Second Circuit viewed as a misleading practice. *In re Grand Jury Subpoena*, 826 F.2d at 1171; *In re N.D.N.Y. Grand Jury Subpoena #86-0351-S*, 811 F.2d at 118. The Second Circuit held that when a district court specifically compels the signing of a directive, the signatory must be permitted to note in the compelled directive that it has been signed pursuant to court order or under protest. *In re Grand Jury Subpoena*, 826 F.2d at 1171; *In re N.D.N.Y. Grand Jury Subpoena #86-0351-S*, 811 F.2d at 118.

Contrary to Subject E's claims, the Fifth Amendment privilege was not implicated in the 1987 Directive Cases; in fact, the Second Circuit specifically held that such compelled directives do not even rise to a facial violation of that privilege as long as the signed directives include language requesting disclosure only *if* a bank has relevant accounts. *In re Grand Jury Subpoena*, 826 F.2d at 1169-71; *In re N.D.N.Y. Grand Jury Subpoena #86-0351-S*, 811 F.2d at 117. The Supreme Court subsequently also reached that result in *Doe* v. *United States*, 487 U.S. 201, 214 (1988). And those cases certainly did not address circumstances under which the "required records" exception to the Fifth Amendment applied, and a subpoena recipient was therefore required to produce documents within their control directly to a grand jury. In fact, the 1987 Directive Cases make clear that they are narrowly limited to circumstances in which the subpoena recipient has a valid Fifth Amendment right to refuse to produce documents directly to the grand jury. *See, e.g.*, *Doe*, 487 U.S. at 218 ("When forwarded to the bank along with a subpoena, the executed directive, if effective under local law, will simply make it possible for the recipient bank to comply with the Government's request to produce such records. As a result, if the Government obtains bank records after Doe signs the directive, the only factual statement made by anyone will be the bank's implicit declaration, by its act of production in response to the subpoena, that it believes the accounts to be petitioner's.").

2

*B. The Government Pursued the Required Records Path, Not A Compelled Directive*

The 1987 Directive Cases have been on the books for twenty years now, and the Government could have sought to compel Subject E to sign such a directive in accordance with those decisions back in 2010, when Subpoena E was issued. But that is not the path the Government took. Rather than seek to compel the signing of a directive to a third party to produce any existing documents, which would not even implicate the Fifth Amendment, the Government sought to compel Subject E to *directly produce* bank documents in her control to the grand jury under the required records exception to the Fifth Amendment. Subject E vigorously opposed that effort, but during the pendency of this litigation both this Court and the Second Circuit have held that a subpoena recipient may be compelled under the required records exception to directly produce foreign bank records to the Grand Jury. *See In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 353 (2d Cir. 2013); *In re Various Grand Jury Subpoenas*, 924 F. Supp. 2d 549, 555 (S.D.N.Y. Feb. 19, 2013). Subject E plainly understood that the instant litigation was not about compelled directives, as she failed to issue any such directives after resolution of the Fifth Amendment issue in this case in March 2014.

Here, the Court has never compelled Subject E to execute a directive with any particular language; it has simply compelled Subject E to produce documents pursuant to clearly established Second Circuit law, *see In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at 353, and has held her in contempt for failing to do what the record shows is plainly within her power. That result is only possible here because, in contrast to the facts of the 1987 Directive Cases (where the court's opinions suggest it was unclear if the relevant accounts even existed and the recipients presumably could have invoked the Fifth Amendment act-of-production privilege in response to a request to directly produce the documents), the robust record in this contempt proceeding demonstrates that the requested accounts exist, Subject E has the practical and legal ability to obtain the relevant documents, and Subject E can be required to directly produce the documents under the required records exception. *See, e.g.*, Government's Motion for Additional Contempt Sanctions (Docket Entry No. 42); Lenow Decl. ¶ 3.

This Court's orders thus in no way implicate the Second Circuit's concerns about district courts compelling an individual to complete a false or misleading document. Indeed, this Court has never expressed a desire or intent to involve itself in the specific mechanics of how Subject E complies with her obligations. That is up to Subject E: she could elect to have a representative obtain the documents in person in Switzerland, she could elect to sign an appropriate directive if she finds that more convenient, or she could explore other possibilities with Credit Suisse and her overseas financial professionals. This Court has simply observed what is, at this point, obvious: Subject E has the legal and practical ability to produce to the grand jury responsive records from 2005 and 2006 relating to Credit Suisse, but has willfully failed to do so.[1] Lenow Decl. ¶ 4.

---

[1] Subject E claims that the Government could easily obtain the requested documents through other means, specifically pursuant to a 2014 plea agreement with Credit Suisse. That is not correct. The Government's plea agreement with Credit Suisse does not provide for the production of documents such as those at issue here; that agreement only requires Credit Suisse

3

## The Court Should Not Issue a Stay of Sanctions

In the event the Court fails to grant her motion to purge contempt, Subject E asks this Court to stay the imposition of sanctions to allow her to seek review in the Court of Appeals. The Government strongly opposes that request.

"The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *McCue* v. *City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton* v. *Braunskill*, 481 U.S. 770, 776 (1987)). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *Id.* (internal quotation marks and alterations omitted).

Subject E is unlikely to succeed on the merits. The Second Circuit has already resolved Subject E's Fifth Amendment objection (raised in her original appeal, and later withdrawn), *see In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, and held that persons in the United States can be required to retrieve subpoenaed material from abroad, *see Marc Rich & Co. A.G.* v. *United States*, 707 F.2d 663, 667 (2d Cir. 1983) ("Neither may the witness resist the production of documents on the ground that the documents are located abroad. The test for the production of documents is control, not location."), and the undisputed factual record shows that Subject E has the legal and practical ability to obtain and produce the outstanding responsive documents, but that she has simply refused. Subject E's true purpose here is transparent: to continue to obstruct and delay at every turn, regardless of the merits of her position.

Further, a stay would significantly prejudice the ongoing grand jury investigation and the public's interest in the speedy resolution of this matter. In particular, there is an ongoing risk that the statute of limitations will expire on criminal conduct committed by Subject E and others. Indeed, the limitations period has already run on certain substantive charges that likely would have been brought against Subject E had she produced all responsive documents in 2014, which is when Subject E repeatedly represented to the Government that she had made a "complete production."

While Subject E would suffer financial loss under the $1,000 per day sanctions, that consideration is mitigated by Subject E's significant wealth, including over $2,000,000 in declared domestic financial accounts, in addition to valuable real estate holdings.

---

to provide certain anonymized account data relevant to U.S. taxpayers, not any of the underlying account documents. *See* April 17, 2017 Leibman Decl., Ex. DD at 5, EE at 4-5.

In light of Subject E's continued flouting of this Court's orders, despite numerous opportunities to comply, this Court should allow sanctions to begin accruing.

Respectfully submitted,

JOON H. KIM  
Acting United States Attorney

By: _____  
Jared Lenow/Katherine Reilly  
Assistant United States Attorneys  
(212) 637-1068 / 6521

cc (by email):  
Alain Leibman, Esq.  
Matthew S. Adams, Esq.